592 A.2d 1090

**Robert J. SIMPSON**

v.

**Gary E. MOORE et al.**

**No. 156, Sept. Term, 1989.**

Court of Appeals of Maryland.

July 23, 1991.

Motion for Reconsideration Denied Sept. 6, 1991.

Joseph M. Mott (Miles & Stockbridge, on brief), Rockville, for appellant.

Carolyn A. Quattrocki, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Millicent Edwards Gordon, Asst. Atty. Gen., Baltimore, MD and Mark H. Bowen, Staff Atty., Maryland State Police of Pikesville), all on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE,* RODOWSKY, McAULIFFE, ADKINS** and CHASANOW, JJ.

McAULIFFE, Judge.

Trooper Carey S. Poetzman was killed in the crash of a Maryland State Police helicopter on 19 January 1986. On 17 January 1989, her surviving spouse, Robert J. Simpson (plaintiff), after first obtaining an award for workers' compensation benefits, brought this action for wrongful death and survivor's benefits. The plaintiff contends the accident resulted from the negligence of two of the decedent's co-employees, and that either they, or the State of Maryland as their employer, should respond in damages.

Plaintiff contends the State has waived its sovereign immunity pursuant to the Maryland Tort Claims Act (MTCA), §§ 12–101 through 12–110 of the State Government Article, Maryland Code (1984, 1986 Cum.Supp.). The defendants moved to dismiss the complaint. The individual defendants each claim immunity pursuant to § 12–105 of the MTCA. The State concedes it has waived sovereign immunity by the enactment of the MTCA, but argues: (1) the plaintiff's action is barred because the plaintiff failed to file a claim with the State Treasurer, or the State Treasurer's designee, within 180 days after the accident, thereby failing to satisfy a condition precedent to recovery established by § 12–106 of the MTCA; and (2) in any event the State is entitled to the immunity granted an employer which has provided workers' compensation benefits, Art. 101, § 15, Maryland Code (1957, 1985 Repl.Vol.). ·

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

Judge Thomas Ward of the Circuit Court for Baltimore City granted the defendants' motion. Plaintiff appealed to the Court of Special Appeals, and we issued a writ of certiorari before consideration of the case by that court. We now affirm.

### I.

We first consider the dismissal of the action against the State. The State's sovereign immunity from tort actions has been substantially waived by the enactment of the MTCA. Originally enacted by Chapter 298 of the Acts of 1981, the MTCA provided for a limited waiver of sovereign immunity, but only as to certain specified tort actions. The MTCA was significantly amended, and the scope of waiver of immunity substantially enlarged, by Senate Bill 380, enacted as Chapter 538 of the Acts of 1985. Our determination of this action against the State turns upon the proper interpretation of the 1985 statutory amendment, and thus the intent of the legislature in enacting it.

Prior to the 1985 amendment,[1] the MTCA provided for a limited waiver of "the immunity of the State, of its units, and of State personnel, who are acting in official capacities" as to certain tort actions. *See Kee v. State Highway Admin.*, 313 Md. 445, 448–49, 545 A.2d 1312 (1988); *Gardner v. State*, 77 Md.App. 237, 239, 549 A.2d 1171 (1988). Although the State personnel who caused the harm could be sued, joinder of the State was required if the plaintiff alleged a "tortious act or omission within the scope of the public duties of the State personnel." Section 12–107 (1984). Section 12–107(d) at that time also provided that:

(1) Any State personnel who acts within the scope of the State personnel's public duties and without malice and

---

1. The Maryland Tort Claims Act was originally codified at §§ 5–401 through 5–408 of the Courts and Judicial Proceedings Article (1974, 1984 Repl.Vol.). As a part of the Code revision process, the MTCA was revised and transferred to the State Government Article by § 1 of Chapter 284 of the Acts of 1984. All references to the Act as it existed prior to the 1985 amendment are to the 1984 volume of the State Government Article.

gross negligence is not liable as an individual for any damages that result from tortious conduct for which immunity is waived under this subtitle, including damages that exceed the limitations on the State's waiver of immunity.

(2) A judgment in tort for money damages obtained under this subtitle against State personnel, in the State personnel's official capacity, is a judgment against the State only and may not be executed against the State personnel individually.

Prior to the 1985 amendment, the MTCA also required, as a condition precedent to the initiation of an action under the Act, that the claimant submit a written claim to the State Treasurer or designee and that the claim be finally rejected. Section 12–105 (1984). A claim could be filed at any time within the period of limitations applicable to the tort alleged, and the filing of the claim tolled the running of limitations until sixty days after a final denial of the claim. Section 12–107(a) (1984). A final denial consisted of an actual denial sent by the Treasurer or designee, or "at the option of the claimant, if the Treasurer or designee fails to give the claimant notice of a final decision within 6 months after the filing of the claim." Section 12–106(d) (1984).

A significant change effected by the 1985 amendment was the expansion of the limited waiver of sovereign immunity from a specific list of tort actions to tort actions generally. The 1985 amendment also deleted all reference to judgments against State personnel.[2] Additionally, by a change that is at the heart of the controversy here, the

---

2. The 1985 amendment provided, at § 12–105 of the MTCA, as follows: State personnel are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under this subtitle, even if damages exceed the limits of the waiver.

Section 12–105 has subsequently been amended, and currently states the immunity of State personnel in the language of § 5–399.2(b) of the Courts and Judicial Proceedings Article (1974, 1989 Repl.Vol., 1990 Cum.Supp.).

General Assembly imposed a 180–day limitation upon the filing of a claim, and re-structured the limitations provisions. As amended, § 12–106 now provides:

(a) *Scope of section.*—This section does not apply to a claim that is asserted by cross-claim or counterclaim.

(b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) the action is filed within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later.

■ The State argues the 180–day filing requirement of § 12–106 is "jurisdictional" and plaintiff's action was properly dismissed because the claim was not timely filed. The plaintiff, although conceding that the literal language of § 12–106 creates a condition precedent with which he has not complied, contends that the legislature intended to engraft upon the MTCA a notice provision identical to § 5–306 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol.). If, he argues, § 12–106 is "interpreted" to include all of the provisions that were contained in § 5–306 of the Courts Article, he will be able to qualify under the "good cause" and "absence of prejudice" criteria established by § 5–306(c) for waiver of the notice requirement.

The plaintiff contends the legislature intended to incorporate within the MTCA the 180–day notice provision which then applied to claims for unliquidated damages made against a county or a municipal corporation. This provision,

codified at § 5–306 of the Courts Article,[3] provided in pertinent part:

(a) *Notice required; time for giving notice.*—Except as provided in subsection (c) of this section, no action for unliquidated damages for an injury to a person or his property may be brought against a county or municipal corporation unless the notice of the claim required by this section is given within 180 days after the injury.

\* \* \* \* \* \*

(c) *Entertainment of suit in absence of notice.*—Notwithstanding the other provisions of this section, the court may, upon motion and for good cause shown, entertain the suit even though the required notice was not given, unless the defendant can affirmatively show that its defense has been prejudiced thereby.

In support of his contention, the plaintiff points to an "explanation of proposed changes" included in an initial draft of what was to become Senate Bill 380, and to portions of a summary of a Report of the Senate Committee on Judicial Proceedings concerning Senate Bill 380. The "explanation" appeared at the end of proposed § 12–106, which inserted for the first time the requirement that a claim be filed within 180 days. It stated:

In subsection (b)(1) of this section, language is added to require notice of the claim within 180 days after the injury occurs. This period is comparable to the 180–day period specified in CJ § 5–306(a) for claims against a county or municipal corporation.

The portions of the Committee Report relied on by the plaintiff state:

This bill is intended to broaden the State's tort liability and make several specific changes with respect to the State's immunity from tort damages.

\* \* \* \* \* \*

---

**3.** The notice provision of § 5–306 of the Courts Article was recodified in 1987, and is now § 5–404 of the Courts Article. Chapter 594, Acts of 1987.

This amendment also inserts language requiring that notice of a written claim submitted to the State Treasurer must be submitted within 180 days after injury to property or person, and eliminates the requirement to include medical expenses or special damages in ones claim for damages.

Summary of Committee Report for S.B. 380, Senate Committee on Judicial Proceedings, March 15, 1985. Plaintiff also points to § 12–102 of the MTCA, which provides that "[t]his subtitle shall be construed broadly, to ensure that injured parties have a remedy." Finally, plaintiff argues that a literal reading of the statute would render a part of § 12–106(b)(3) meaningless.

From all of this, says the plaintiff, it must be obvious that the legislature (1) intended to incorporate a notice provision without disturbing the existing requirement of an administrative claim at some point within the applicable statute of limitations, and (2) intended to incorporate the 180–day notice provision then found in § 5–306 of the Courts Article, including the provisions of this section relating to the waiver of notice requirement upon a showing of good cause and in the absence of a showing of prejudice.

The plaintiff is the first to concede that the plain language of the statute as amended is inconsistent with the result he seeks. He states:

> However, in preparing the amendment, the language did not conform with the legislative intent of requiring notice of a claim but rather combined into one what should have been two separate provisions. The result was that the statute read as though the claim itself must be submitted within 180 days instead of merely notice of a claim. As a result, the clear legislative intent that notice to the State be given within 180 days does not conform with the actual language of the statute which appears to require that a claim be submitted to the State Treasurer within 180 days.

*    *    *    *    *    *

The real legislative intent versus the intention indicated by the literal meaning of the language in the 1985 amendment is what is at stake in this case.

Appellant's Brief, pp. 16, 21.

The plaintiff argues that the "plain language" of a statute may not control when it is clear that the legislature intended something different. In *Wynn v. State*, 313 Md. 533, 539, 546 A.2d 465 (1988), this Court, quoting in part from *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987), said:

> [T]he plain-meaning rule is not a complete, all-sufficient rule for ascertaining a legislative intention because the meaning of the plainest language is controlled by the context in which it appears.... In determining the context of statutory language, we must consider any persuasive evidence 'including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.'

Similarly, in *Kaczorowski,* we discussed the general rule that the intent of the legislature may ordinarily be determined by reference to the words of the statute, where those words produce a plain meaning. We said, however, quoting in part from *Darnall v. Connor*, 161 Md. 210, 215, 155 A. 894 (1931), the plain-meaning rule "is not a complete, all-sufficient rule for ascertaining a legislative intention...." *Kaczorowski*, 309 Md. at 514, 525 A.2d 628. On the other hand, we have made it clear that "a court is not wholly free to rewrite a statute merely because of some judicial notion of legislative purpose." *Id.* at 516 n. 4, 525 A.2d 628.

The plaintiff urges us to treat the 180–day filing requirement as a notice provision, because the sponsor of the bill and the committee considering it referred to, and borrowed from, an existing notice provision. There are two significant shortcomings in this argument. First, the legislature

clearly did not, as it might have done, superimpose a notice provision upon the existing framework for the filing of a claim. Had it done so, the time for filing a claim would have continued to be any time within the period of limitations applicable to the claim, and there simply would have been an additional requirement that notice of the intent to file a claim be given within 180 days of the occurrence. While we may agree with the plaintiff that such an approach would have been preferable, that is clearly not what was done. Instead, the legislature tied the 180–day provision directly to the requirement for the filing of a claim.

Second, even if the legislature had superimposed a 180–day notice provision upon the existing claim procedure, and had not tied the two together, that would have availed the plaintiff of naught in the absence of an "escape" provision. When the notice provision relating to claims against counties and municipalities was first enacted, it did not contain an escape clause, and the decisions of this Court were consistent in holding that failure to comply with the notice requirement barred the action. *See Loewinger v. Prince George's County*, 266 Md. 316, 292 A.2d 67 (1972) (fact that municipality knew about the accident and had investigated it would not excuse failure to give notice required by statute); *Rich v. City of Baltimore*, 265 Md. 647, 290 A.2d 777 (1972) (giving of required notice was condition precedent to right to file action); *Cotham and Maldonado v. Board*, 260 Md. 556, 273 A.2d 115 (1971) (discovery rule, applicable to statute of limitations triggered by accrual of cause of action, is not applicable to notice provision requiring notice within a specified time "after the injury or damage was sustained"); *Neuenschwander v. Wash. San. Com.*, 187 Md. 67, 76–77, 48 A.2d 593 (1945) (legislature may properly condition the right to bring an action for damages against a municipal corporation upon the giving of written notice of the claim within a specified time). Although this Court has held that substantial compliance with the notice statute will suffice, *Grubbs v. Prince George's Co.*, 267 Md. 318, 324–25, 297 A.2d 754

(1972); *Loewinger, supra,* 266 Md. at 318, 292 A.2d 67; *Jackson v. Bd. of Co. Comm'rs,* 233 Md. 164, 167–68, 195 A.2d 693 (1963), we refuse to "judicially place in the statute language which is not there" in order to avoid a harsh result. *Cotham, supra,* 260 Md. at 565, 273 A.2d 115. It was not until 1972 that the legislature amended the notice provision to permit an exception:

Notwithstanding the provisions of (a) above, the court may, upon motion and for good cause shown, entertain the suit even though the required notice was not given, unless provided further the defendant can affirmatively show that its defense has been prejudiced thereby.

Chapter 519, Acts of 1972.

In adopting a 180–day requirement without also adopting any exception to that requirement, the legislature has imposed a condition precedent which carries with it the rigors of the pre–1972 law governing notice to municipalities. The legislature was aware of the existence and contents of the 180–day notice provision when it borrowed from that provision in imposing a 180–day requirement in the MTCA. Indeed, the legislative history shows specific references to § 5–306 of the Courts Article, where the notice provision was then codified. The legislature could have, if it wished, tracked the exception provision of that statute in amending the MTCA. For whatever reason, it did not do so, and we are not free to judicially place in the statute an entire section of language which is not there.

The legislative history shows only that the General Assembly intended to incorporate a 180–day notice provision, which it did, albeit interlocked with the claim-filing requirement. The explanation that "[t]his period is comparable to the 180–day period specified in CJ § 5–306(a) for claims against a county or municipal corporation" shows only an intent to track the time period used by the referenced statute; it does not suggest an intent to also incorporate the escape provision of that statute.

Moreover, as Judge Singley pointed out for this Court in *Birmingham v. Board,* 249 Md. 443, 449, 239 A.2d 923 (1968):

Nor have we the power to correct an omission in the language of a statute, even although the omission was the obvious result of inadvertence.

Similarly, in *Rogan v. B. & O.R.R. Co.,* 188 Md. 44, 54, 52 A.2d 261 (1947), Judge Delaplaine wrote for the Court that:

Interpolation of words, to make a statute include matters which the Legislature did not expressly include, invades the function vested solely in the Legislature, however plausible may be the conjecture that those matters were within the legislative purview.

Even though a certain provision, which has been omitted from a statute, appears to be within the obvious purpose or plan of the statute, and to have been omitted merely by inadvertence, nevertheless the court is not at liberty to add to the language of the law; and the court must hold that the Legislature intended to omit the provision, however improbable that may appear in connection with the general policy of the statute.

Plaintiff insists that the Senate Judiciary Committee's conclusion that the 1985 amendment was "intended to broaden the State's tort liability" is inconsistent with the imposition of a 180–day limitation, because that would have the effect of narrowing, rather than broadening, the State's liability. The Statement of Legislative Intent, as it appeared in the Committee Report, provided as follows:

This bill is intended to broaden the State's tort liability and make several specific changes with respect to the State's immunity from tort damages.

As we pointed out earlier, the bill did indeed broaden the State's tort liability by waiving sovereign immunity as to all torts rather than the specific categories of torts previously listed. That other "specific changes" may have had the effect of imposing limiting conditions upon the exercise of a claimant's rights against the State is not inconsistent with

the general statement of legislative intent found in the Committee Report.

Section 12–102, providing that the MTCA "shall be construed broadly, to ensure that injured parties have a remedy" cannot serve as a springboard for judicial legislation. Provisions such as this, and the canon of construction favoring a liberal interpretation of remedial legislation, are helpful in resolving ambiguities in statutes, but do not permit us to expand the statute to afford relief where the words of the statute bar that relief. *See Lockerman v. Prince George's County,* 281 Md. 195, 202 n. 5, 377 A.2d 1177, 1182 (1977); *Di Blasio v. Kolodner,* 233 Md. 512, 519–20, 197 A.2d 245 (1964); *Crowner v. Balto. Butchers Ass'n,* 226 Md. 606, 610, 175 A.2d 7 (1961).

We acknowledge difficulty in giving meaning to all the language of § 12–106(b)(3) of the MTCA. As plaintiff has pointed out, if there is a 180–day limitation on the filing of a claim and there is an outside limit of 6 months after filing for final denial of a claim, it is difficult to give force to all the language requiring that an action be filed "within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later." The State suggests that the parties may jointly agree to an extension of time beyond the statutorily prescribed 6 months for the State Treasurer or designee to consider a claim, and if that occurred, § 12–106(b)(3) would have greater meaning. That would still not explain how the first stated contingency, the filing of an action within 1 year after a claim is denied, would ever occur later than the second stated period, "3 years after the cause of action arises."

Under the construction urged by the plaintiff, if the late filing of a claim may be excused by a showing of good cause and a finding of absence of prejudice, a claim could conceivably be filed almost 3 years from the date of occurrence, and allowed under the exception. Denial by the Treasurer might come 6 months thereafter, and the claimant would then have an additional year in which to bring suit—nearly four and one-half years downstream from the

occurrence. Conceptually, plaintiff's hypothetical might be extended even beyond that time frame, because if the court may excuse the late filing of a claim for an indefinite period of time, a claim filed five years after the occurrence could be permitted, and the internal limitations provisions of the statute would allow up to an additional one and one-half years for the filing of an action.

Neither interpretation of this portion of the statute is entirely satisfactory. Although this Court, whenever possible, will construe a statute to avoid an interpretation that renders any part of the statute nugatory or makes it surplusage, *Board of Educ., of Garrett Co. v. Lendo,* 295 Md. 55, 62–63, 453 A.2d 1185 (1982), we will not rewrite a statute simply to accomplish that objective. The only course open to us under the circumstances of this case is to note the problem, and trust that the legislature will address it.

Justice Brandeis, speaking for the Supreme Court in *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) said:

What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.

We view the plaintiff's request in the same light here, and decline to supply the omitted exception to the 180–day filing requirement, even if we assume it was inadvertently omitted.

In the absence of statutory authority to excuse the late filing, the claim against the State must fail. The doctrine of substantial compliance has no application to an outright failure to comply, and compliance in this case was a condition precedent to the maintenance of a claim against

the State.[4]

## II.

The State has also advanced an alternative argument that plaintiff's claim against it is barred because the State, as an employer providing workers' compensation benefits for the plaintiff's decedent, enjoys a separate immunity from suit that has not been waived.

As we recently pointed out in *Brady v. Ralph Parsons Co.*, 308 Md. 486, 496–98, 520 A.2d 717 (1987), Article 101, § 15 of the Maryland Code (1957, 1985 Repl.Vol.) provides that, apart from several statutory exceptions, the employer's exclusive liability to an employee suffering an accidental injury in the course of his employment is as set forth in the Workmen's Compensation Act, and an injured employee may not ordinarily maintain an action at law for damages against the employer. "Since the worker's sole remedy against the employer is a claim under the Act, the employer is considered to be 'immune' from suit at law." *Id.* at 498, 520 A.2d 717.

In Maryland, unlike a number of other states, the exclusivity provision of the Workmen's Compensation Act has been held not to bar a claim against a co-employee.[5] *Athas v. Hill*, 300 Md. 133, 137–38, 476 A.2d 710 (1984). Accord-

---

**4.** In agreeing with the State that the plaintiff's claim is barred for failure to satisfy a condition precedent, we do not accept the State's characterization of this as a "jurisdictional" defect, at least not in the sense of fundamental jurisdiction. The court had jurisdiction of the parties and subject matter.

**5.** An exception exists in the case of a co-employee who is a supervisory employee, and who has not breached a personal duty owed to the claimant. *Athas v. Hill*, 300 Md. 133, 148–50, 476 A.2d 710 (1984). In the instant case, the defendants contended, and the trial judge held, that the action against Moore was barred because it was an action against a supervisory co-employee for an alleged breach of a nondelegable duty owed by the employer, and not for breach of a personal duty owed by one employee to another. In view of our holding that the plaintiff's claims are barred on other grounds, we do not reach this issue.

ingly, before the State waived its immunity and granted immunity to State personnel, an action brought by a State employee against a co-employee was not barred by the Workmen's Compensation Act. A new question is presented, however. Where the co-employee enjoys immunity under the MTCA and the claim is brought directly against the State, does the State enjoy the separate immunity provided by Article 101, § 15? In view of our holding that the State cannot be sued in this case because the plaintiff failed to comply with the 180–day requirement for the filing of a claim, we need not, and do not, answer this question. We note in passing, however, that the plaintiff in this case has failed to offer any persuasive argument why Article 101, § 15 would not apply under these circumstances.

### III.

As we noted at the outset, plaintiff brought this action against the individual defendants as well as against the State. He contends that if the State is successful in avoiding liability, then the State has not waived its sovereign immunity, and thus has not conferred statutory immunity upon the State personnel involved. The plaintiff misreads the MTCA. At the time of the accident in this case,[6] § 12–105 of the MTCA provided:

> State personnel are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under this subtitle, even if damages exceed the limits of that waiver.

There is nothing contingent about this grant of immunity. The State waived its immunity, but imposed certain proce-

---

6. As noted above, § 12–105 was rewritten by Chapter 546 of the Acts of 1990, and currently sets forth the grant of immunity to State personnel in terms of § 5–399.2(b) of the Courts and Judicial Proceedings Article. That change has no significance for our discussion of this issue.

dural requirements for the successful maintenance of a claim or action against it. The failure of the claimant to follow the procedural requirements established by the Act may result in the loss of the claim, but it does not have the effect of rescinding the grant of statutory immunity to State personnel accomplished by § 12–105. If this were not the case, a plaintiff could control the relative immunities and liabilities of the State and its personnel. A plaintiff could, for instance, choose to comply with § 12–106 and sue the State if he felt it would be to his advantage, or he could deliberately delay filing his claim and deprive the State employees of their entitled immunity under § 12–105. The legislature clearly could not have intended such a result. The plaintiff's claims against the State were not lost because of sovereign immunity, but because the plaintiff failed to comply with a legislatively created condition precedent to the maintenance of a claim against the State.

## CONCLUSION

This action cannot be maintained against the State, nor against the State personnel who have been sued. Accordingly, the trial court correctly granted the motion to dismiss.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.