*857 A.2d 1155*

**Shirley L. DOWNES**

v.

**Gregory DOWNES.**

**No. 1697, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 13, 2004.

Richard J. Magid, Christopher B. Lord (Whiteford, Taylor & Preston, LLP on the brief), Baltimore, for Appellant.

Charles W. Collett, Easton, for Appellee.

Panel: KENNEY, BARBERA, and WILLIAM W. WENNER (Retired, specially assigned), JJ.

BARBERA, Judge.

Appellant, Shirley L. Downes, filed this appeal after the Circuit Court for Talbot County, on appeal from the orphans' court, denied her motion to grant a fifth petition for extension of time to file an election to take a statutory share of her deceased husband's estate. The court determined that it did not have the discretion to grant the petition after the preceding extension period had expired, and dismissed the appeal.

Appellant challenges that judgment before us. For the reasons that follow, we affirm.

## FACTS AND LEGAL PROCEEDINGS

Appellant's husband, Eldridge Downes, IV, ("decedent") died testate on October 23, 1997. The decedent was also survived by a son from a previous marriage, Gregory Downes, appellee.

In his last will and testament, the decedent bequeathed to appellant all of his personal property and a marital trust. The trust was to be funded by any assets that exceeded the credit shelter equivalent amount, *i.e.*, all sums exceeding $600,000.00, which, in 1997, was the amount a testator could pass to other beneficiaries free from federal tax. The amount of appellant's inheritance, therefore, depended on the net value of the decedent's estate.

The credit shelter equivalent amount was bequeathed to a residuary trust for the benefit of the decedent's parents and descendants. At the time of the decedent's death, appellee was the sole living beneficiary of the residuary trust.

Appellant was named as personal representative of the estate. She had difficulty ascertaining the value of the decedent's estate due to several unresolved claims against the estate and disputes over the decedent's ownership interests in three businesses.

The problems encountered by appellant in valuing the estate prompted her to seek to extend the period within which she could elect to renounce the will and take what is known as the "statutory" or "elective" share of the estate, *i.e.*, a one-third share of the decedent's estate if, as in this case, the decedent also has a surviving child. *See* Maryland Code (1974, 2001 Repl.Vol.), § 3–203(a) of the Estates and Trusts Article ("ET").[1]

Extensions of time to elect the statutory share are authorized by ET § 3–206(a), which at the relevant time provided:

> *In general; extension.*—The election by a surviving spouse to take an elective share shall be made not later than seven months after the date of the first appointment of a personal representative under a will. The court may extend the time for election, before its expiration, for a period not to exceed

---

1. Unless otherwise indicated, all statutory references are to this version of the Estates and Trusts Article, which was in effect at the time relevant to this appeal.

three months at a time, upon notice given to the personal representative and for good cause shown.[2]

Appellant filed five petitions for extension of time. The first four of these were timely filed and were granted by the orphans' court.

The election period under the fourth petition expired on June 2, 1999. Twenty-two days later, appellant filed a "Fifth Petition for Extension of Time to File Election to Take a Statutory Share" ("fifth petition"). The orphans' court denied the fifth petition as having been filed late. Appellant filed a motion to reconsider the denial of the petition, arguing that she had substantially complied with the statutory deadline. By order entered on September 28, 1999, the orphans' court denied the motion to reconsider. In a separate opinion, the orphans' court rejected appellant's substantial compliance argument, explaining that it lacked the authority to grant the petition because it was filed after the expiration of the preceding extension period.[3]

Eventually, through litigation and other means, the estate's financial affairs were resolved and its net worth was determined to be approximately $1,000,000.00. Consequently, about a year and a half after the orphans' court denied the fifth petition, appellant filed the fifth and final administration account of the decedent's estate.

---

2. Effective October 1, 2003, ET § 3–206(a) was amended to allow a surviving spouse to take an elective share within the later of: "Nine months after the date of the decedent's death; or [ ] Six months after the first appointment of a personal representative under a will." The provision concerning extensions of time was not substantively changed.

3. The orphans' court relied on the Court of Appeals' decision in *Simpson v. Moore*, 323 Md. 215, 228, 592 A.2d 1090 (1991). The Court held in *Simpson* that the requirement that a claim be filed within a statutorily specified time could not be subject to a "substantial compliance" analysis: "The doctrine of substantial compliance has no application to an outright failure to comply, and compliance in this case was a condition precedent to the maintenance of a claim against the State." *Id.* at 228–29, 592 A.2d 1090.

The orphans' court approved the final account on February 13, 2001. The court determined that appellant was entitled to take under the will only the personal property, which was valued at $66,155.00.

Appellant filed an appeal in circuit court.[4] She challenged the orphans' court's denial of the fifth petition. She also filed in the circuit court a "Motion to Grant the Fifth Petition for Extension of Time to File Election to Take a Statutory Share."

Appellee filed a motion to intervene, which the court granted. Appellee also filed a motion to dismiss the appeal on the ground that the appeal was late because the orphans' court's denial of appellant's motion for extension of time and motion for reconsideration were appealable orders. The circuit court agreed that appellant's appeal was untimely and dismissed it.

Appellant appealed to this Court, and we reversed in an unreported opinion, *Downes v. Downes*, No. 2162, September Term, 2001, 148 Md.App. 715 (filed November 14, 2002), *cert. denied*, 373 Md. 407, 818 A.2d 1106 (2003). We held that the orphans' court's orders denying appellant's fifth petition and subsequent motion to reconsider were not immediately appealable. We explained that appellant's claim was not resolved until the orphans' court approved the fifth and final administration account on February 13, 2001, and only then did the claim become final, and thus appealable. Slip op. at 14. Consequently, we remanded the case to the circuit court for further proceedings. *Id.* at 16.

The parties appeared for a hearing in the circuit court on August 29, 2003, to address appellant's motion to grant the fifth petition. Appellant argued that the court had the equita-

---

4. Maryland Code (1973, 2002 Repl.Vol.), § 12–502 of the Courts and Judicial Proceedings Article provides for an appeal to the circuit court from the decision of the orphans' court. That section states, in pertinent part:

(a) In general; exception in Harford and Montgomery counties.(1)(i) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, a party may appeal to the circuit court for the county from a final judgment of an orphan's court.

ble discretion to "extend the time to permit the filing even though it is technically late."

After hearing argument, the court rendered its decision:

[T]he question therefore boils down to, is this Court bound by the dictates of Section 3–206 of the Estates and Trust Article and does that section require that the Petition for Extension be made prior to the expiration of the latest period for making the election? The Court finds that this Court is bound by that law. And that the election, the Court could only extend the time for election if before the expiration of the period the petition was filed seeking to have it extended for an additional three months.

The court added:

This, [appellant's counsel] says, is a harsh law and maybe that's true. But this Court feels that if that law should be changed, as perhaps it should be to provide that an extension can be granted until the filing of the final administration account, that is a change that should be made by the legislature and not the judicial branch[,] [w]hich should not rewrite clear and unambiguous laws. The law in this case Section 3–206(a) seems clear and unambiguous to this Judge. But that notice had to be given and good cause shown prior to the expiration of the previous extension. Accordingly the Court will decline to extend the time. And we'll find that [appellant] gave up or lost her right to elect by failing to file that motion within the time set by the statute.

The court thereafter entered an order denying appellant's motion to grant the fifth petition for the reasons stated in its oral ruling.

This appeal followed.

## DISCUSSION

### I.

Appellant argues that the circuit court committed legal error in denying her fifth petition to extend the time to elect

the statutory share of the decedent's estate. Appellant states the issue before us as whether

> [t]he Orphans' Court (or the Circuit Court when it is hearing a *de novo* appeal) has discretion to extend the deadline to accept a petition for an extension of time in which to make an election to take a statutory share when the petition was filed after the expiration of the previous period.

We note preliminarily that our review is limited to whether the circuit court correctly concluded that it did not have the discretion to enlarge the election period beyond the statutorily prescribed extension period. We therefore do not reach the parties' arguments concerning whether, assuming the court did have such discretion, it was an abuse of discretion not to grant the petition.

## II.

At the heart of this appeal is the proper construction of ET § 3–206(a), which, as we have said, provided at the time relevant to this case that "the court may extend the time for election, before its expiration, for a period not to exceed three months at a time, upon notice given to the personal representative and for good cause shown." Neither the Court of Appeals nor this Court has construed this provision, although the Court of Appeals construed an earlier version of it in *Barrett v. Clark,* 189 Md. 116, 54 A.2d 128 (1947). We therefore shall discuss that case at some length here.

At the time *Barrett* was decided, the then-governing law precluded any extension of the statutory share election period by surviving spouses. The operative section of the statute provided that the period of renunciation was thirty days after expiration of the notice to creditors. It read:

> A surviving husband or widow shall be barred of his or her right of dower in land or share in land or share in the personal estate by any such devise or bequest, unless within thirty (30) days after the expiration of the notice to creditors in the wife's or husband's estate, as the case may be, he

or she shall deliver or transmit to the Court or Register of Wills where administration has been granted a written renunciation in substantially the following form or to the following effect....

Md.Code Ann. (1943), art. 93, § 314.

A separate section of the statute created an exception to that rule for infant spouses and incompetents. It provided:

The renunciation as provided in Section 314 may be made by the guardian of an infant spouse, when authorized so to do by the Court having jurisdiction of the infant's estate, or may be made on behalf of an incompetent when authorized by the equity court having jurisdiction of the person of said incompetent. *The time to make such renunciation may be enlarged before its expiration by an order of the Orphans' Court* where such will was probated for a further period of not exceeding six months upon any one application, upon a petition showing reasonable cause and on notice given to such persons and in such manner as the Orphans' Court may direct.

Md.Code. Ann. (1943), art. 93, § 315 (emphasis supplied).

Mrs. Barrett, the surviving spouse, wanted the extension of time because certain litigation concerning the estate would not be resolved within the period provided by art. 93, § 314. *Barrett,* 189 Md. at 118–19, 54 A.2d 128. She had sought to have the provisions of art. 93, § 315 applied to her so that she could seek to extend the time for filing her renunciation. She argued that the phrase "such renunciation" should be read to mean "all renunciations," thereby bringing her within the purview of § 315. *Id.* at 122, 124, 54 A.2d 128.

The orphans' court concluded that it did not have the authority to grant Mrs. Barrett's request for an extension of time to renounce her husband's will. *Id.* at 119–20, 54 A.2d 128. The Court of Appeals affirmed.

The Court began its analysis with the observation that "the right of a surviving husband or widow to renounce the will under the laws of this State has always been strictly construed." *Id.* at 122, 54 A.2d 128. To this the Court added:

It is not within the province of this Court to decide what provisions should be made for extending the time for filing of such renunciation, or to decide whether the time should be extended. It is only within our province to interpret what the Legislature intended by the Act as passed.

*Id.*

Then, addressing general principles of statutory interpretation, the Court said:

"We follow the fundamental rule that a Court is not at liberty to surmise a legislative intention contrary to the letter of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intention which is not evidenced in the original form. A statute should be construed according to the ordinary and natural import of its language, unless a different meaning is clearly indicated by the context, without resorting to subtle or forced interpretation for the purpose of extending or limiting its operation."

*Id.* at 123, 54 A.2d 128 (quoting *Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A.2d 619 (1946)).

Applying these principles, the Court reasoned that, if the General Assembly had intended to include all surviving spouses within the purview of § 315, it could have used language reflecting that intention. *Id.* at 124, 54 A.2d 128. The Court recognized that the legislature might well have had policy reasons for permitting an extension of time for the classes of persons identified in § 315, but not for surviving spouses generally. In this regard, the Court observed:

[I]t has been usual in limitations statutes to extend the time for infants and incompetents beyond that allowed for other persons. Code, Article 57, Section 2. It is entirely possible that those persons closest to an infant or an incompetent might not learn of the probate of a will until long after its probate. On the other hand, such a contingency is hardly likely in a surviving spouse who is sui juri. This might well have been the intention of the Legislature in extending the

time only to the guardian of an infant spouse and on behalf of an incompetent.

It has always been the policy of the law that estates should be administered and closed as soon as reasonably possible.... The members of the General Assembly may have thought that an Act giving the power to the Orphans Court of this State, generally, upon reasonable cause shown, to extend the time to the surviving husband or widow, generally, to file the renunciation, might lead to much delay and litigation in the settlement of estates.

*Id.* at 124–25, 54 A.2d 128.

Consequently, art. 93, § 315 did not permit a surviving spouse, who was neither an infant nor an incompetent, to seek an extension of time for filing an election of a statutory share, beyond the time permitted by the statute.[5]

Appellant contends that *Barrett* is inapposite to the present case because the statute in effect in 1947 permitted no extensions of the election period for surviving spouses (other than those described in art. 93, § 315), thereby making Mrs. Barrett's extension request "irrelevant." In addition, appellant points out that the case before us is different from *Barrett* because the present case involves the court's authority to extend the time within which an extension can be made, whereas *Barrett* involved a requested extension of time before the election period had expired.

These factual distinctions, although correct, do not render *Barrett* inapplicable to the instant case. To the contrary, although the statute governing time extensions has changed since *Barrett* was decided, the present case and *Barrett* are factually analogous on at least one significant point: Both cases involve a surviving spouse seeking to enlarge the election period beyond that prescribed in the applicable statute.

---

5. In response to the *Barrett* decision, the General Assembly amended the statute to authorize time extensions for all surviving spouses. *See Senk v. Mork,* 212 Md. 413, 419, 129 A.2d 675 (1957).

More important, the underlying legal principle that the statutory share statute is to be strictly construed is as applicable to the present case as it was to *Barrett*. Indeed, we have found no evidence of a retreat by the Court of Appeals from this rule of strict construction.

*Bunch v. Dick*, 287 Md. 358, 412 A.2d 405 (1980), is instructive in this regard. In *Bunch*, the Court addressed the question whether an election by a surviving spouse to take a statutory share from the decedent's estate is effective when the election is filed after the surviving spouse's death. The orphans' court had concluded that the surviving spouse had not made a timely election to take the statutory share. This ruling had the effect of excluding the surviving spouse's estate from participating in the estate of the decedent, because the spouse had only a life estate under the terms of the decedent's will.

The Court of Appeals affirmed. Quoting with approval a decision of the Surrogate's Court of Westchester County, New York, the *Bunch* Court stated:

> "The right [to elect the statutory share] sought to be enforced is conferred by statute and in derogation of the common-law right of every testator to make a free disposition of his worldly goods. One seeking to avail herself of such right must comply with the plain conditions imposed by the legislature."

*Bunch*, 287 Md. at 361–62, 412 A.2d 405 (quoting *In Re Banks' Will*, 31 N.Y.S.2d 652, 655 (Sur.Ct.1941)).

Because the surviving spouse in *Bunch* had not complied with all of the requirements set out in ET § 3–207(a) (prescribing the form by which the election must be made), the written renunciation of the decedent's will, which the surviving spouse had signed but not filed before her death, was ineffective to constitute an act of election under the statute. *Bunch*, 287 Md. at 362, 412 A.2d 405.

Although not directly controlling this case, *Barrett*, and to a lesser extent *Bunch*, lead naturally to the conclusion that the period prescribed in ET § 3–206(a) for extending the

time within which a surviving spouse may elect the statutory share may not be enlarged by either the orphans' court or the circuit court on *de novo* appeal. Thus, if a surviving spouse does not file a petition for extension of time within the originally prescribed period or, as here, the previously extended period, the spouse is foreclosed from thereafter obtaining additional time to make the election. This conclusion is consistent with the plain language of ET § 3–206(a), the Court of Appeals' interpretation of the earlier version of the statute in *Barrett,* and the rationale of *Bunch.*

## III.

Appellant seeks to escape from the seemingly foreclosing effect of ET § 3–206(a), *Barrett,* and *Bunch* by arguing that both the orphans' court and the circuit court had the authority to accept appellant's untimely petition for extension of time to elect her statutory share. She directs us to the proposition that, "[a]bsent a statute or rule limiting its authority, a trial court generally has the authority to extend a non-jurisdictional time limit for filing a pleading or other paper, although the court's exercise of such authority is subject to review on appeal for abuse of discretion." *Vogel v. Grant,* 300 Md. 690, 694 n. 4, 481 A.2d 186 (1984). She argues that *Vogel* and other cases authorize the orphans' court and the circuit court to excuse a late-filed petition under ET § 3–206(a). These cases, and the principle of law for which appellant cites them, do not assist her cause.

Appellant cites *People's Counsel v. Public Serv. Comm'n,* 52 Md.App. 715, 719–21, 451 A.2d 945 (1982), *cert. denied,* 295 Md. 441 (1983). In that case we held that the circuit court possessed the discretion to fashion a remedy, short of dismissal, for the People's Counsel's failure to file a memorandum of law setting forth the issues to be raised on appeal from an administrative proceeding within the time required by then Maryland Rule B12. In so concluding, we recognized that some rules of procedure require or expressly permit an extreme sanction for violation of the procedural requirements they or other rules establish, and other rules "provide either

no explicit sanction or a range of alternative sanctions, in which event the courts have tended to balance the purpose and importance of the requirement against the circumstances of its violation." *Id.* at 720, 451 A.2d 945. We reasoned from this proposition that, although dismissal might be the preferred sanction for a violation of Rule B12, "we do not believe that it is a mandatory sanction required to be applied indiscriminately in all cases. The trial court, we think had some discretion in the matter." *Id.*

Appellant also cites *Golub v. Spivey,* 70 Md.App. 147, 155, 520 A.2d 394 (1987), a case in which we followed, albeit in a different context, our decision in *People's Counsel. Golub* was a case arising out of a claim filed under the Health Care Malpractice Claims Act ("Act"). The patient, who had been awarded damages by the arbitration panel, did not respond within thirty days to the doctor's action to nullify the award, as required by then Maryland Rule BY4a.1. The doctor maintained that the patient's failure to comply with the rule required dismissal of the court action and automatic nullification of the arbitration award. *Id.* at 155, 520 A.2d 394. We disagreed.

We observed at the outset that the requirement of a timely declaration by the plaintiff is not found in the Act itself, but in a rule of procedure. And we noted that the rule comes into play only after notice of an action to nullify has been filed in circuit court. *Id.* We drew a distinction between the provisions of the Act, which must be "strictly construed so as to effectuate the legislative purpose of screening malpractice claims before they reach the courts," and the rules of procedure that govern any subsequent litigation. *Id.* at 155–56, 520 A.2d 394 (citation and emphasis omitted). We therefore were "guided in our analysis of the effect of the rule violation in this instant case by the construction previously placed upon noncompliance with other rules prescribing time limits for *the litigation process.*" *Id.* at 156, 520 A.2d 394 (emphasis supplied).

We concluded in *Golub* that, although Rule BY4a.1 was couched in mandatory language, "where a claimant who is not the aggrieved party fails to file a declaration in a timely manner, the trial judge is vested with discretion to excuse that violation of the rule if the circumstances surrounding the claimant's noncompliance with the time limit justify that action." *Id.* at 155, 520 A.2d 394. Important to our analysis, however, was that Rule BY4a.1 did not prescribe any consequences for noncompliance with its time limit. *Id.* at 157, 520 A.2d 394.

We then cited in *Golub* a number of cases that applied the proposition that a court possesses the discretion to fashion the appropriate sanction for failure to comply with "other rule-prescribed time limits." *Id.* at 157, 520 A.2d 394 (citing *Faulkner v. Town of Chestertown*, 290 Md. 214, 220, 428 A.2d 879 (1981)) (no abuse of discretion in permitting late filing of cross-claim); *Toomey v. Gomeringer*, 235 Md. 456, 459–60, 201 A.2d 842 (1964) (no abuse of discretion in permitting late filing of answer to zoning appeal); *Easter v. Dundalk Holding Corp.*, 233 Md. 174, 179–80, 195 A.2d 682 (1963) (rulings as to time for filing pleas will not be disturbed absent showing of prejudice or abuse of discretion); *Kramer v. Emche*, 64 Md. App. 27, 43, 494 A.2d 225 (1985) (court has discretion to grant right to file a cross-claim or counterclaim after time for doing so has expired).

For three reasons, the present case is fundamentally different from these cases relied upon by appellant. First, we are dealing here with a time limit prescribed by statute, not by rule of procedure.

Second, implicit in the statute at issue here, ET § 3–206, is a direct consequence for a surviving spouse's failure to file a timely extension of the period for election of the statutory share. That consequence, though unexpressed, is having to take under the will. *See Carroll County v. Uhler*, 78 Md.App. 140, 149, 552 A.2d 942 (1989) (finding sanctions implicit in a statute by "giving effect to each of its words, clauses, sentences, and phrases"). *See also Bish v. Bish*, 181 Md. 621,

627, 31 A.2d 348 (1943) ("The law in this State could certainly not be more positive that, unless a widow renounces within the time allowed by the statute, she accepts under the will."); *Yungerman v. Yungerman*, 165 Md. 609, 611, 170 A. 170 (1934) ("Acceptance of a devise or bequest is not required to bar a widow's rights outside the will; absence of renunciation is alone sufficient to bar them."); *Collins v. Carman*, 5 Md. 503, 530 (1854) ("The law admits of no excuse for a failure to renounce. If she makes no election within the time prescribed, the law makes it, without stopping to enquire why or for what reason she made none."); Edgar G. Miller, Jr., CONSTRUCTION OF WILLS, § 293 at 824 (1927) ("The law makes the failure to renounce, whether voluntary or not, an acceptance of the devise.").

■ Appellant's argument that the orphans' court has the authority to enlarge ET § 3–206(a)'s prescribed period for extension of time fails for a third reason: The principle concerning a trial court's inherent authority to extend procedural deadlines, cited in the cases relied upon by appellant, applies to judicial proceedings, not orphans' courts proceedings. *Cf. Golub*, 70 Md.App. at 155–56, 520 A.2d 394 (pointing out the distinction between arbitration under the Health Care Malpractice Claims Act, where the governing statutory provisions are strictly construed, and judicial review of an arbitration award, where the principle of judicial discretion to extend certain rule-prescribed deadlines may apply). Orphans' courts, of course, "are tribunals of special, limited jurisdiction that can exercise only such authority and power as is expressly provided them by law." *Comptroller of Treas. v. Russell*, 284 Md. 174, 177, 395 A.2d 488 (1978); *see also* ET § 2–102 (setting forth the jurisdiction of the orphans' court).

## IV.

■ Neither do we agree with appellant that the circuit court on appeal possesses equitable powers that are broader than the powers granted the orphans' court, thereby permitting the circuit court to grant appellant's Motion to Grant the

Fifth Petition, even if the orphans' court could not. *See Kaouris v. Kaouris,* 324 Md. 687, 715, 598 A.2d 1193 (1991) (stating that "the circuit court, although expected to make its own determination, is limited to those that could properly have been made by the orphans' court; the circuit court does not exercise *its* plenary jurisdiction over the matter").

## V.

We are similarly unpersuaded by appellant's argument that several rules of procedure grant to the orphans' court and circuit court the discretion to extend the time limits prescribed by ET § 3–206. Appellant suggests, first, that Maryland Rule 1–204(a) gives the courts such authority. Rule 1–204(a) provides that when the

> rules or order of court require or allow an act to be done at or within a specified time, the court, on motion of any party and for cause shown, may ... on motion filed after the expiration of the specified period, permit the act to be done if the failure to act was the result of excusable neglect.

This rule does not apply to the case before us because ET § 3–206 is not a "rule or order of court."

Appellant also points to Maryland Rules 6–104 and 6–107. Both are found within Title 6, "Settlement of Decedents' Estates." Consequently, both "apply to all matters in the orphans' court and before the registers of wills relating to the settlement of decedents' estates." Md. Rule 6–101.

Appellant argues that Rules 6–104 and 6–107 each permit the orphans' court to extend procedural deadlines when the operative rule or statute does not expressly prohibit extensions or prescribe consequences for non-compliance. Rule 6–104(a), titled "Rules of construction," states in relevant part:

> When a rule, by the word 'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the

noncompliance in light of the totality of the circumstances and the purpose of the rule.

█ The operative language for our purposes is the requirement that a court may excuse noncompliance with a rule only when the consequences are not prescribed by rule or statute. We have already explained that the consequence for failing to comply with the time requirements of ET § 3–206 is prescribed, albeit implicitly, by the statute.

Moreover, to read Rule 6–104 as appellant would have us do would be contrary to the express language of Rule 6–411(c), which is derived from ET § 3–206(a) and states in relevant part:

Within the period for making an election, the surviving spouse may file with the court a petition for an extension of time. The petitioner shall deliver or mail a copy of the petition to the personal representative. For good cause shown, the court may grant extensions not to exceed three months at a time, *provided each extension is granted before the expiration of the period originally prescribed or extended by a previous order.*

(Emphasis supplied).

We decline to impart a meaning to Rule 6–104(a) that flies in the face of the express limitation in Rule 6–411 upon the orphans' court's power to grant extensions of time to elect the statutory share.

We likewise see no merit in appellant's argument that Rule 6–107(b) permits the orphans' court to excuse a late-filed petition for extension of time. Rule 6–107(b) reads:

Except as otherwise provided in this section, when these rules, an order of court, or other law require or allow an act to be done at or within a specified time, the court, upon petition filed pursuant to Rule 6–122 and for good cause shown, may extend the time to a specified date. The court may not extend the time for filing a claim, a caveat, or a notice of appeal or for taking any other action where expressly prohibited by rule or statute.

Appellant focuses on the language of this rule that permits a court, upon proper petition and for good cause shown, to extend the time within which an act must be done. She overlooks, however, the last sentence of the rule, which prohibits such extensions if expressly prohibited by rule or statute. As we have said, Rule 6–411(c) expressly prohibits the orphans' court from extending the time for the statutory share election, if the request comes *after* the expiration of the period extended by a prior order.

We are not dissuaded from this interpretation of Rule 6–107(b) simply because, as appellant points out, the editor's note to that rule includes a cross-reference to Rule 6–411(c). Appellant argues that this cross-reference is meant to provide an example of a situation in which the orphans' court may excuse a late-filed petition. We disagree. As appellee observes in response to this argument: "Given the language in Rule 6–411 (which follows the language of E & T § 3–206) the more probable reason for its reference is as an example of a rule that *prohibits* latitude." (Emphasis supplied).

The rules of construction are as applicable to rules of procedure as they are to statutes. *Brown & Williamson Tobacco Corp. v. Gress*, 378 Md. 667, 676, 838 A.2d 362 (2003). Of relevance here are the rules that the principal guide to a rule's meaning is its plain language, *id.*, and that provisions relating to the same subject matter "should, if possible, be read in harmony rather than as contradictory, so that proper effect can be given to both." *Williams v. State*, 375 Md. 404, 425, 825 A.2d 1078 (2003). Applying these construction principles here leads ineluctably to the conclusion that none of the rules identified by appellant empowers the orphans' court to enlarge the periods prescribed in ET § 3–206(a).

## VI.

We conclude, therefore, that ET § 3–206(a)'s express grant to the orphans' court of the authority "to extend the time for election, before its expiration, for a period not to exceed three months at a time, . . .," is limited to timely filed

petitions, that is, petitions that are filed before the expiration of the period originally prescribed in the statute or as extended by prior court order. And nothing in the statute or any of the governing rules of procedure allows the orphans' court or the circuit court, on appeal from the decision of the orphans' court, to entertain a late petition.

Our conclusion is in accord with most of our sister states that have addressed this issue. *See In Re O'Shea's Will,* 45 Misc.2d 84, 255 N.Y.S.2d 729, 732 (equating the filing deadline for electing a statutory share with a statute of limitations and holding that the surviving spouse's right to take her statutory share was lost, despite allegations of fraud, when she failed to make an election within the prescribed time), *aff'd,* 24 A.D.2d 845, 263 N.Y.S.2d 554 (1965); *In re Estate of Faller,* 407 Pa. 73, 180 A.2d 33, 35 (1962) (determining that the "time requirement [for electing a statutory share] is mandatory and cannot be extended except upon proof that the surviving spouse, by actual fraud, has been induced or misled to delay the election"); *Batleman v. Rubin,* 199 Va. 156, 98 S.E.2d 519, 525 (1957) (declaring that election is not required while a suit concerning the will remains pending, but recognizing that a surviving spouse desiring an extension of time must make a proper application within the prescribed time); *Moise v. Moise's Ex'r,* 302 Ky. 843, 196 S.W.2d 607, 608 (1946) (stating that the court "is without power to grant additional time to determine whether or not to renounce, unless application be made therefor within the time prescribed by Statute for the election"); *Bunker v. Murray,* 182 Mass. 335, 65 N.E. 420, 421 (1902) (holding that the probate court had no power to extend the deadline for requesting an extension of time).

States holding otherwise are governed by statutes granting the orphans' court the power to enlarge the time. *In Re Estate of Thurman,* 13 Utah 2d 156, 369 P.2d 925, 928 (1962)(holding that the deadline for filing extension could be extended where the statute explicitly accorded the court discretion to do so); *In re Woolley's Estate,* 96 Vt. 60, 117 A. 370, 371–72 (1922) (holding that a probate court had the authority to grant an extension after the eight-month deadline for

electing a statutory share, where the legislative intent made clear that the statute was to be construed liberally).

In sum, then, the circuit court properly determined, as had the orphans' court, that it was precluded from exercising its discretion to enlarge the election period beyond the statutorily designated period set forth in ET § 3–206(a). Accordingly, we leave that ruling undisturbed.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**