**Jack McCARTY, et al.,**
**Plaintiffs-Appellants,**

v.

**Ben HENSON, et al.,**
**Defendants-Appellees.**

No. 84–2006.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1984.

Cornett, Echols & Biard, Leighton Cornett, Paris, Tex., for plaintiffs-appellants.

Henslee & Ryan, Donald G. Henslee, David P. Ryan, Austin, Tex., Mike Rowan, Tyler, Tex., for Henson, et al. & N. Lamar ISD.

Before CLARK, Chief Judge, GOLDBERG and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Black voters contend that their vote has been diluted, in violation of the fourteenth and fifteenth amendments, by the election of school board trustees at large and seek an order that the seven members of the North Lamar Independent School District in Lamar County, Texas, be elected from single-member districts. The district court found that the at-large system had not been created or maintained with discriminatory intent and that the plaintiffs had failed to prove that the system operated to dilute black votes or that it had a discriminatory impact. Fed.R.Civ.P. 52(a) forbids us to overturn findings of this nature unless we find them clearly erroneous. Because the fact findings are supported by the record, we affirm the district court's dismissal of the constitutional claims. The plaintiffs also alleged, although they did not further press the contention, that the at-large system abridged their right to vote in violation of the Voting Rights Act, as amended in 1982. The district court did not expressly address this claim, but its findings show that the at-large system has not had a discriminatory impact on black voters. Accordingly, we affirm the dismissal of the Voting Rights Act contention.

The district court found: the School District has a total population of 7954, of which 568 or 7.1% are black. The black population is concentrated in the northeastern portion of the District, bordering the Red River. The District was formed in the late 1960's by successive consolidation of several separate districts.

Only two black candidates sought election to the Board of Trustees. The first, Robert Bills, was defeated in 1975 and 1976. In 1980, Geneva Bailey, a black woman, was appointed to fill a vacancy on the Board. In 1981 she was elected, but, when she ran for re-election in 1981, she was defeated.

Black voters register and vote in Lamar County without hindrance, as each plaintiff testified, and there is no hindrance or obstacle to the candidacy of black persons for the Board. Neither the District nor the Board has discriminated against black students in providing educational services. The drop-out rate for black students is considerably lower than for whites, and on the Texas Assessment of Basic Skills (TABS) test, black students perform significantly better than the statewide average for black students. Many black citizens have been appointed to advisory committees to assist the Board of Trustees in making educational and fiscal policy decisions.

The District has, since 1975, made significant efforts to hire more minority employees in all levels of School District employment, particularly as teachers. The District's black employees represent a slightly higher percentage (8.6%) than the black

proportion of the overall population (7.1%). While the plaintiffs have proved historical discrimination in areas of social life in East Texas and Lamar County, they have not proved that such past discrimination has a lingering present effect that currently limits minority participation in the voting process or minimizes minority voting strength in the District. The court concluded, "plaintiffs have not proved that a discriminatory intent motivated or motivates the North Lamar Independent School District in its utilization of the at-large election scheme."

 As part of its conclusions of law, the district court also stated:

Plaintiffs have failed to prove by a preponderance of the evidence that vote dilution exists in the North Lamar Independent School District as a special form of discriminatory impact or effect which is traceable to the at-large election scheme—they have failed to show that the at-large election system operates to cancel out or minimize either their voting strength or their ability to participate fully in the political process.

* * * * * *

Plaintiffs have not proved by a preponderance of the evidence that the at-large election system was either created or maintained with invidious purpose.

At-large election schemes are not unconstitutional per se.[1] To prove a denial of constitutional rights under the fourteenth or fifteenth amendment, the plaintiffs must prove that the at-large election plan has a discriminatory impact upon their voting strength and that the system was implemented or maintained with the intent to discriminate.[2] In determining whether these exist, the court should consider the "totality of the circumstances" generally

and the criteria outlined by this court in *Zimmer v. McKeithen.*[3] In *Lodge v. Buxton,*[4] we indicated that, even after *Bolden,* the existence of the *Zimmer* factors might be indicative, though not conclusive, of discriminatory purpose.

 The district court applied the *Zimmer* criteria and found none sufficiently implicated in this suit to demonstrate either actual discriminatory vote dilution or purposeful discrimination in the creation or maintenance of the at-large election system. The conclusions of the plaintiffs' witnesses, that the Texas legislature enacted at-large election systems with the discriminatory intent to dilute black voting strength, are unexplained and unsupported. These witnesses were unfamiliar with the legislative history and processes preceding the adoption of these particular statutes, and had little specific knowledge of how or why the legislative system is maintained and operated. The witnesses were also unfamiliar with the adoption of the District's at-large election system and with how or why that system is maintained. The plaintiffs presented no other competent evidence, direct or circumstantial, that either the Texas legislature or the Lamar Independent School District adopted or maintained the at-large election system with the intent to discriminate against black voters. We do not, therefore, reappraise the district court's assessment of the weight to be given to the opinion testimony offered by the plaintiffs.

The plaintiffs' failure to prove discriminatory intent supports denial of relief on the constitutional claims. However, the district court's findings, recited above, also show that the plaintiffs did not establish discriminatory impact. There is no evidence that candidate slating is practiced in

---

**1.** *White v. Regester,* 412 U.S. 755, 765, 93 S.Ct. 2332, 2339, 37 L.Ed.2d 314 (1973); *Whitcomb v. Chavis,* 403 U.S. 124, 156–60, 91 S.Ct. 1858, 1876–78, 29 L.Ed.2d 363 (1971).

**2.** *City of Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980); *Lodge v. Buxton,* 639 F.2d 1358 (5th Cir.1981). *See also Jones v. City of Lubbock,* 727 F.2d 364 (5th Cir.1984).

**3.** 485 F.2d 1297 (5th Cir.1973) (en banc), *aff'd on other grounds, sub nom., East Carroll Parish School Bd. v. Marshall,* 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976).

**4.** 639 F.2d 1358, 1375 (5th Cir.1981).

the school district, and the plaintiffs allege no other hindrance to the candidacy of black persons for the board. Although several of the plaintiffs' witnesses asserted that an independent black Board member would be more responsive to the needs of blacks in the District, none testified to any specific examples of unresponsiveness by the present Board. The district court cited numerous uncontroverted examples of the Board's responsiveness to the needs of the black community, including participation in funding programs for disadvantaged students, appointment of black citizens to advisory committees, and efforts to recruit and hire more minority employees. The plaintiffs did not rebut this evidence of the Board's responsiveness by coming forward with specific instances of present Board unresponsiveness. The evidence of discriminatory hiring practices by the Board during the late 1960's and early 1970's does not establish that the Board is unresponsive today.

Plaintiffs submitted no evidence that the state policy behind at-large districting is tenuous. Although the defendants have conceded that historically there has been both social and economic discrimination against black persons in the District, the plaintiffs presented no evidence connecting that history to present black participation in the political system. The evidence shows that candidates in the District are elected by plurality vote, and that there are no majority or anti-single shot voting requirements that might prevent the election of minority candidates. Plaintiffs' witnesses did offer opinion testimony of polarized voting, but this alone does not suffice to show discriminatory impact.

The plaintiffs have not submitted evidence of an aggregate of *Zimmer* factors or a totality of circumstances to support their claim that the at-large voting system cancels out or dilutes their voting strength or their ability to participate fully in the political process.

■ In their complaint, the plaintiffs invoked the Voting Rights Act[5] but they did not make any specific allegation that the Act had been violated, nor did they raise the Voting Rights Act issue in their arguments to the district court. Instead, they relied on asserted violations of the fourteenth and fifteenth amendments. The trial court consequently made no findings under the Voting Rights Act.

Although the plaintiffs argue in their brief that they are entitled to relief under the Voting Rights Act, the findings of fact by the district court on the constitutional issue show that it would have denied relief under the Act had the claim been urged. The Act forbids any voting practice that "results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color."[6] Its violation is established by proving discriminatory impact under a "totality of circumstances." The legislative history to the Act lists a set of objective criteria to guide the courts in analyzing the discriminatory impact of an election system. This list incorporates the *Zimmer* criteria with a few additions.[7] Since the district court found no discriminatory impact, i.e., no abridgment of the right to vote on account of race, and that the political processes are equally open to participation by black persons, the plaintiffs have not established a violation of the Voting Rights Act. Although the Act was amended in 1982 to eliminate the requirement that a plaintiff under the Act prove that the election system was implemented or maintained with discriminatory intent,[8] the plaintiffs in this case have not established the denial or abridgment of their right to vote that is a prerequisite to relief.

---

5. 42 U.S.C.A. § 1973 (West Supp.1983).

6. 42 U.S.C.A. § 1973 (West Supp.1983).

7. *See Jones v. City of Lubbock,* 727 F.2d 364, 379 (5th Cir.1984), *citing* S.Rep. No. 417 at 28–29,

1982 U.S.Code Cong. and Ad.News 177, at 206–07; H.R.Rep. No. 227 at 30.

8. 42 U.S.C.A. § 1973 (West Supp.1983). *See Jones v. City of Lubbock,* 727 F.2d 364, 378 (5th Cir.1984).

For these reasons, the judgment is AF-FIRMED.