992 A.2d 413

Shirley L. SUDER

v.

WHITEFORD, TAYLOR & PRESTON, LLP, et al.

No. 15, Sept. Term, 2009.

Court of Appeals of Maryland.

April 9, 2010.

Howard J. Schulman (Daniel P. Doty of Schulman & Kaufman, LLC, Baltimore), on brief, for petitioner.

Alvin I. Frederick (James E. Dickerman and Daniel R. Hodges of Eccleston & Wolf, P.C., Hanover), on brief, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

ADKINS, Judge.

The trial-within-a-trial doctrine is unique to legal malpractice cases. The doctrine provides a mechanism we do not see elsewhere for a tribunal to resolve a proximate cause query.

When the doctrine is applicable, the litigants reconstruct the underlying action, absent the supposed breach of duty. The tribunal must not only determine how the parties would have proceeded had there been no breach, but must also assume the role of the earlier adjudicator in order to ascertain the probable outcome of the action. Simply put, the court must try a case within a case.

We have previously recognized the trial-within-a-trial doctrine when the legal malpractice claimant was denied a trial due to the attorney's alleged malpractice. In this appeal, we are asked to determine whether the doctrine may apply when the underlying trial or other proceeding has already been litigated. We hold that it can. We also hold that, in applying the doctrine, the attorney is not limited to the defenses actually raised by the underlying defendant, but may assert those defenses that the original defendant would have raised if the attorney had never breached his or her duty.

Here, Respondent Whiteford, Taylor & Preston ("Whiteford") defends against a malpractice action brought by its former client, Shirley Suder, in connection with the administration of her deceased husband's estate. Suder filed a complaint for malpractice against Whiteford in the Circuit Court for Talbot County, alleging that Whiteford committed legal malpractice when it missed the deadline to request an extension of time to file Suder's request to elect her statutory share of her late husband's estate. Whiteford does not contest that it breached its duty by failing to file for an extension until after the deadline, resulting in the Orphans' Court's denial of Suder's motion for statutory election. Whiteford does dispute, however, that its negligence was the proximate cause of her injury, contending that the Orphans' Court could not have granted the extension in any event, because its earlier order granting a previous extension was void. The Circuit Court for Talbot County granted summary judgment in favor of Suder, which the Court of Special Appeals ("CSA") reversed and remanded with an instruction to enter a judgment in favor of Whiteford. We reverse the judgment of the CSA and remand

the case to the CSA for it to remand to the Circuit Court for a trial on the merits.

## FACTS AND LEGAL PROCEEDINGS

This legal malpractice action arises from an estate administration dispute between Petitioner Suder and Gregory Downes ("Downes"). In *Downes v. Downes*, 388 Md. 561, 880 A.2d 343 (2005), Judge Wilner, writing for this Court, summarized the underlying controversy as follows:

> [Suder, formerly known as Shirley Downes] is the surviving spouse of Eldridge Downes IV.... In his Will, [the decedent] left all of his tangible personal property to [Suder] and named her as his personal representative.... On November 3, 1997, the Orphans' Court admitted the Will to probate and, pursuant to the Will, appointed [Suder] as personal representative....
>
> On June 2, 1998—one day prior to the then seven-month deadline for her to decide whether to renounce the Will and take her statutory share of the Estate—[Suder], acting *pro se,* filed a petition for an extension of that time.... [O]n June 9, 1998, [six days after the deadline,] the court granted [it].... [¹] On August 27, 1998, [Suder], again acting *pro se,* filed a petition for a second extension of time to elect her statutory share [which the court also granted until December 1, 1998].
>
> [On November 23, 1998, Suder retained Respondents, Whiteford, Taylor & Preston, LLP and Ascanio S. Boccutti, an attorney employed by Whiteford, "to represent and advise her concerning whether or not to renounce her late husband's will and take her statutory share."]
>
> On November 30, 1998—one day before the expiration of the current extension—[Suder], this time through [Whiteford and Boccutti], filed a petition for a third extension.... She claimed that, due to a lack of cooperation on the part of

---

1. The Court noted that no issue had been raised about the validity of the untimely order for extension. *Downes v. Downes,* 388 Md. 561, 566 n. 3, 880 A.2d 343, 346 n. 3 (2005).

[three businesses in which her late husband had an interest], she had been unable to determine the value of the assets or the extent of the liabilities. On December 1, the court granted another three-month extension, until March 1, 1999. On February 24, 1999, again through counsel, [Suder] requested a fourth extension, for the same reason. On March 2, the court granted the extension, until June 2, 1999.

\* \* \*

For whatever reason, [Suder, through Whiteford and Boccutti,] allowed the fourth extension to expire. On June 24, 1999—twenty-two days after the expiration of the extension period—she filed a petition for a fifth extension. . . . On July 6, 1999, the court, citing [Estates & Trusts Article ("ET") ] § 3–206(a), denied the petition. [Suder] moved for reconsideration of that denial, claiming that she had substantially complied with the deadline requirement. In October, 1999, the court, citing *Simpson v. Moore*, 323 Md. 215, 228, 592 A.2d 1090, 1096 (1991), denied the motion, holding that the problem was not one of substantial compliance but of noncompliance with the statutory requirement.

[Suder] did not seek any immediate review of the Orphans' Court's denial of her petition for fifth extension, but rather completed the administration of the Estate. On February 13, 2001, the court approved the Fifth and Final Administration Account showing a gross Estate of $3,228,701 and a net Estate after payment of taxes and expenses of $945,291. On March 15, 2001, she filed an appeal to the Circuit Court from the denial of her petition for fifth extension and her motion to reconsider that denial. [Decedent's son, Downes], as sole surviving beneficiary of the residuary trust, moved to intervene in the Circuit Court action, noting that, if [Suder] were permitted to renounce the Will, the value of the residuary trust would be decreased by about one-third. He also moved to dismiss the appeal as untimely, arguing that the denial of [Suder's] request for a fifth extension constituted a final judgment and that an appeal should have been taken within 30 days after that order.

On November 15, 2001, the Circuit Court granted [Downes's] motions to intervene in and to dismiss the appeal. The court concluded that the order of July 6, 1999 that denied [Suder's] petition for fifth extension was a final, appealable judgment ... and that her appeal from that order in March, 2001, was untimely.

[Suder] then appealed to the [CSA] which, in an unreported Opinion filed November 14, 2002, reversed the Circuit Court ruling. The intermediate appellate court concluded that the effect of the July, 1999 order was simply "to preclude [Suder] from electing an alternative method of calculation" and that nothing in that order "suggests a final adjudication of [Suder's] claim, or even a specific valuation as to [Suder's] award." Because that order did not finally adjudicate her claim in regard to the Estate, it was not immediately appealable. The final, appealable judgment, the court held, was the order approving the Fifth and Final Administration Account. The case was thus remanded to the Circuit Court for further proceedings on [Suder's] appeal.

\* \* \*

[On remand, the circuit court] read what is now [ET] § 3–206(a)(2) as not allowing the court to grant a subsequent extension once the allowable period or current extension expired. The court noted that [Suder] was aware of that fact, having complied with the requirement on four prior occasions, and observed that if the law created a harsh result, the remedy lay in a legislative change, not one crafted by the Judiciary.

[Suder] appealed again, but this time the [CSA], in a reported Opinion, affirmed. *Downes v. Downes*, 158 Md. App. 598, 857 A.2d 1155 (2004).... [T]he intermediate appellate court held that the period prescribed in [ET] § 3–206 for extending the time for a spousal election may not be enlarged by either an orphans' or circuit court. It rejected [Suder's] argument that a circuit court had greater authority in this regard than an orphans' court, either under the Maryland Rules or under equitable principles, and declared

that "if a surviving spouse does not file a petition for extension of time within the originally prescribed period or, as here, the previously extended period, the spouse is foreclosed from thereafter obtaining additional time to make the election." *Downes v. Downes, supra,* 158 Md.App. at 610, 857 A.2d at 1161. We granted *certiorari* to consider the single question of whether an orphans' court, or a circuit court in a *de novo* appeal, has discretion to accept a surviving spouse's petition for extension of time to make an election under ET § § 3–203(a) and 3–206(a) and Maryland Rule 6–411(c) when the petition seeking the extension is filed after the previous election period has already expired. *Id.* at 566–70, 880 A.2d at 345–48 (footnotes omitted) (footnote added). This Court went on to affirm the CSA judgment. *Id.* at 578, 880 A.2d at 353.

Thereafter, Suder brought this suit against Whiteford, alleging that the firm's failure to file the fifth petition for an extension before the previous election period had expired resulted in her loss of the right to disclaim her husband's Will and elect a statutory share of his estate. Whiteford countered, arguing that its untimely filing was not the proximate cause of Suder's injuries, because she lost the right to elect a statutory share of her husband's estate when her first *pro se* request for an extension was not granted by the Orphans' Court until after the expiration of the election period, even though it was timely filed. Whiteford filed a motion to dismiss the case, and Suder filed a motion for summary judgment. The Circuit Court for Talbot County denied Whiteford's motion, and granted summary judgment and entered a final judgment in favor of Suder after determining that the first extension was valid for public policy reasons, namely, that "[i]t would seem to be wrong, maybe even against public policy to hold this litigant in any way at fault for doing what she needed to do on time because an entity, the Orphans' Court, didn't respond before June 3rd for whatever reason." The court also ruled that, because Downes never challenged the first extension during the entire time the estate remained open, Whiteford could not now raise the issue.

In an unreported opinion, the CSA reversed the Circuit Court, holding that the grant of the first extension was a voidable order that could be contested by Downes at any time. It also approved use of the trial-within-a-trial doctrine to determine Whiteford's liability. In this regard, it concluded that, although Downes based his challenge of Suder's election on the fifth extension, Whiteford was not limited to those grounds and could challenge proximate cause by raising the validity of the first extension. Reasoning that no reasonable legatee would disregard the opportunity to prevail on the erroneous grant of the first extension if the fifth petition had been timely filed, the CSA reversed the Circuit Court's denial of Whiteford's motion to dismiss and remanded the case to that court to enter a judgment in favor of the firm. Suder noted this timely appeal.

We granted certiorari to consider the following issues: [2]

I. Whether the trial-within-a-trial doctrine of proving proximate cause is appropriate in a malpractice action in which the client is not denied the opportunity to proceed to trial.

II. Whether the CSA correctly concluded that, as a matter of law, Whiteford's conduct was not the proximate cause of Suder's damages.

## DISCUSSION

### I. Standard of Review

When reviewing a trial court's grant of summary judgment, the appellate court must determine whether there is a dispute

---

**2.** We have re-phrased the issues stated in the Petition for Certiorari, which were:

(1) Can a defendant in a legal malpractice case rely on an affirmative or mandatory defense that was conclusively waived by the party-opponent in the underlying case?

(2) Does the "case-within-a-case" methodology permit a court to speculate about what might have happened in the absence of a lawyer's negligence?

(3) Did the lower court err in reversing the trial court's determination that Respondent's negligence was the proximate cause of Petitioner's damages?

as to a material fact sufficient to require an issue to be tried. *See Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 93, 756 A.2d 963, 972 (2000). "Summary judgment is not a substitute for trial. . . . Evidentiary matters, credibility issues, and material facts which are in dispute cannot properly be disposed of by summary judgment." *Id.*

> The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal. In reviewing a grant of summary judgment under Md. Rule 2–501, we independently review the record to determine whether the parties properly generated a dispute of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party.

*Haas v. Lockheed Martin Corp.,* 396 Md. 469, 479, 914 A.2d 735, 741 (2007) (quotation marks and citations omitted).

## II. Analysis

■ To prevail on a claim for legal malpractice, a former client must prove "(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." *Thomas v. Bethea,* 351 Md. 513, 528–29, 718 A.2d 1187, 1195 (1998). Here, Whiteford does not contest that it was employed by Suder and that it breached its duty by failing to file a fifth petition for an extension until 22 days after the deadline. Nor does it dispute that Suder received less under the will than she would have received as her elective share under ET Section 3–203(a), a loss of at least $269,920.06.[3] *See* Md.Code (1974, 1991 Repl.Vol., 1992 Suppl.) § 3–203(a) of the Estates and Trusts Article ("ET"). Rather, Whiteford challenges

---

**3.** The language of then-Section 3–203(a) of the Estates and Trusts Article is now codified at Section 3–203(b) of that same Article. *See* Md.Code (1974, 2001 Repl. Vol., 2009 Suppl.) § 3–203(b) of the Estates and Trusts Article.

Suder's assertion that its failure to timely file the request for an extension was the proximate cause of her damages.

Whiteford contends that Suder cannot satisfy the proximate cause requirement for legal malpractice because her right to elect to take a statutory share was lost when the Orphans' Court erroneously granted her first request to extend the elective period after the first statutory period had already expired. Whiteford's representation of Suder did not begin until well after this. Whiteford asserts that Downes would have challenged the validity of the first extension, and would have prevailed, had the Circuit Court not already denied Suder's fifth extension as untimely.[4] To prove that denial of the fifth extension was not the proximate cause of Suder's damages, Whiteford seeks to apply the trial-within-a-trial doctrine, albeit asserting that no actual trial is required because a motion to dismiss should have been granted.[5] The firm argues that even if it had timely filed the petition for the fifth extension, Downes would have successfully prevented Suder from collecting her statutory share because of the invalidity of the first extension. Thus, it maintains, Suder was not actually placed in a worse position because of Whiteford's conduct.

Suder, on the other hand, contends that Whiteford is precluded from basing its defense on the Circuit Court's improper grant of a first extension because Downes never challenged that petition. She argues that allowing Whiteford to employ the trial-within-a-trial doctrine and present a hypothetical situation where Downes could not challenge the fifth extension is an improper rewrite of history. As the case had already been litigated, there is no question as to how Downes would have proceeded, i.e., without challenging the first extension.

---

4. Whiteford proposes that Downes did not immediately challenge the first extension because, at that point, he did not know whether Suder would disclaim the will to his detriment. By the time Downes decided to intervene, he had no "need to object to the first extension as there [was] no set of circumstances where the court would have concluded that the fifth extension was valid[.]"

5. The trial-within-a-trial doctrine, which we further discuss *infra*, contemplates use of motions under Maryland Rules 2–322 and 2–501.

Alternatively, Suder argues that even if the trial-within-a-trial doctrine can be applied, Downes waived his right to challenge the first extension, and if Whiteford is to stand in his shoes, it is restricted to Downes's chosen course of attack.

## A. *Trial–Within–A–Trial Doctrine*

 The trial-within-a-trial doctrine is "the accepted and traditional means of resolving issues involved in the underlying proceeding in a legal malpractice action." *Thomas,* 351 Md. at 533, 718 A.2d at 1197 (*quoting* Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 32.8 (4th ed. 1998 Supp.)). It should be applied where there is no bright line malpractice. *Cf. Thomas,* 351 Md. at 520, 718 A.2d at 1190 (describing doctrine as proper in a settlement malpractice action because there is "a range for honest differences of opinion in making settlement recommendations, and that, accordingly, a recommendation to settle or not to settle on particular terms is not malpractice simply because another lawyer, or even many other lawyers, would not have made the same recommendation under the alleged circumstances.") (quotation marks and citation omitted). The trial-within-a-trial doctrine is summarized in Section 53 of the *Restatement (Third) of the Law Governing Lawyers.* Comment b to that section ("Action by a civil litigant: loss of a judgment") provides in relevant part:

> In a lawyer-negligence or fiduciary-breach action brought by one who was the plaintiff in a former and unsuccessful civil action, the plaintiff usually seeks to recover as damages the damages that would have been recovered in the previous action or the additional amount that would have been recovered but for the defendant's misconduct. To do so, the plaintiff must prove by a preponderance of the evidence that, but for the defendant lawyer's misconduct, the plaintiff would have obtained a more favorable judgment in the previous action. The plaintiff must thus prevail in a "trial within a trial." All the issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiff's former lawyer, with the latter taking the place

and bearing the burdens that properly would have fallen on the defendant in the original action. Similarly, the plaintiff bears the burden the plaintiff would have borne in the original trial. . . .

*Restatement (Third) of Law Governing Lawyers* § 53 cmt. b (2000). The trial-within-a-trial doctrine exposes "what the result 'should have been' or what the result 'would have been'" had the lawyer's negligence not occurred. Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 35:12 (2010).

Suder argues that the trial-within-a-trial doctrine cannot be utilized here, where the underlying case has been litigated because history has already established Downes's course of action, which was to challenge the request for a fifth extension rather than the first extension. As support, she cites several cases in which courts have applied the doctrine to investigate allegations that the attorney's malpractice prevented a trial from ever taking place. *See Thomas,* 351 Md. at 513, 718 A.2d at 1187 (attorney negligently advised his clients to settle rather than proceed to trial); *Central Cab Co. v. Clarke,* 259 Md. 542, 270 A.2d 662 (1970) (ordering additional proceedings where the client could prove that it had a meritorious defense in the underlying matter and thus the default judgment resulting from the attorney's negligence was the proximate cause of the client's damages); *Bongiorno v. Liberty Mut. Ins. Co.,* 417 Mass. 396, 630 N.E.2d 274 (1994) (attorney's malpractice resulted in dismissal of client's claim). These cases, however, do not say that the doctrine is limited to "no-trial" situations, as Suder contends.

Indeed, in other cases, outside of Maryland, the doctrine has been applied after the completion of a trial in the underlying case. *See McIntire v. Lee,* 149 N.H. 160, 816 A.2d 993 (2003) (malpractice established after jury determined that evidence that was not introduced in the underlying trial was relevant and should have been introduced); *Prince v. Garruto, Galex & Cantor, Esqs.,* 346 N.J.Super. 180, 787 A.2d 245 (App.Div.2001) (ordering a trial on the merits to determine when omission of a witness in previous trial constituted malpractice); *see also Meyer v. Maus,* 626 N.W.2d 281, 287 (N.D.2001) ("The case-

within-a-case doctrine requires that, but for the attorney's alleged negligence, litigation would have ended with a more favorable result for the client."); *Aubin v. Barton*, 123 Wash. App. 592, 98 P.3d 126, 134 (2004) ("[T]he trial court hearing the malpractice claim retries, or tries for the first time, the client's cause of action that the client contends was lost or compromised by the attorney's negligence, and the trier of fact decides whether the client would have fared better but for the alleged mishandling."). Furthermore, Suder's rationale does not comport with the purpose of the doctrine, which, as stated above, is to determine what *would have occurred* had Whiteford timely filed the petition for the fifth extension. Thus, the question is whether Downes would have challenged the validity of the first extension had Whiteford timely filed the fifth request for extension. The trial-within-a-trial doctrine is designed to resolve that question.

We are not persuaded otherwise by Suder's interpretation of Section 53 of the *Restatement (Third) of the Law Governing Lawyers*. Comment b to that section provides in relevant part:

> The plaintiff in a previous civil action may recover without proving the results of a trial if the party claims damages other than loss of a judgment. For example, a lawyer who negligently discloses a client's trade secret during litigation might be liable for harm to the client's business caused by the disclosure.

*Restatement (Third) of the Law Governing Lawyers* § 53 cmt. b (2000). Suder narrowly interprets the Restatement's "loss of a judgment" to mean the loss of the chance to litigate at all. We see nothing in Comment b that proposes such a limitation. Rather, the example provided by the Restatement suggests that when the plaintiff is damaged in a way other than receipt of a less favorable judgment, the trial-within-a-trial approach is not necessary to prove malpractice.

Ultimately, the triggering mechanism for the trial-within-a-trial doctrine is a dispute over proximate cause, not whether the client lost the chance of a trial. As causation is the

question in this case, we agree with the CSA that the doctrine should be applied.

### B. Whiteford's Right To Raise The Defense Of The Improper Grant Of The First Petition For Extension

 Both parties characterize the first erroneously granted extension as voidable, not void. This is consistent with this Court's holding in *Downes* regarding the fifth extension:

> If the court improperly grants an extension in violation of [the time limitation in ET § 3–206(a)(2) ] and a proper appeal is noted, its action will be reversed by the appellate court and all will be made right. To regard an improper extension as an excess of jurisdiction [i.e., to classify it as void], however, would allow anyone at any time to challenge it. Years later, title to both real and personal property, even in the hands of innocent third parties, could be challenged. There is no need, and no justification, for an approach that might lead to that result.

*Downes,* 388 Md. at 575, 880 A.2d at 351. Thus, *Downes* was permitted to challenge the validity of the first extension throughout the appellate process, up until the close of the estate administration.

Whiteford argues that although Downes did not attack the first extension during the underlying case, the firm should not be precluded from asserting that defense because it was one that was available to Downes. We agree only partially, and explain.

Whiteford is not precluded from challenging the first extension simply because Downes chose to challenge the fifth extension rather than the first. In other words, Whiteford is not limited by the manner in which Downes actually handled his own defense. This, however, does not mean that Whiteford is necessarily entitled to raise all possible defenses that were available to Downes. As we stated above, in a malpractice action, a court should attempt to ascertain what *would*

*have happened* had the attorney not breached his or her duty. *See Legal Malpractice, supra,* at § 35:12. Therefore, Whiteford is limited to those defenses that Downes *would have* raised in the underlying action if he could not attack the fifth petition, rather than those he *actually* raised. As we discuss in the next section, this is a question for the finder of fact.

We hasten to point out that allowing Whiteford to rely on Downes's other defenses will not affect the outcome of the underlying estate administration. Suder incorrectly asserts that allowing Whiteford the opportunity to challenge the first petition constitutes a collateral attack on a closed order and that "[u]nder the law-of-the-case doctrine, litigants cannot raise new defenses once an appellate court has finally decided a case if these new defenses could have been raised on the facts as they existed prior to the first appeal." Suder misinterprets the purpose of permitting Whiteford to raise that defense. To be sure, the invalidity of the first extension cannot be asserted against Suder to alter the outcome of the estate administration; it was never advanced by Downes with regards to that action, and thus he cannot resurrect it to affect the disposition of the estate. *See generally Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 490, 525 A.2d 232, 233 (1987) (*quoting Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)) ("Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.").

Here, Whiteford is given the chance to present the defense as merely the knife that severs the causal link between its own negligence and Suder's damages in *this malpractice action.* Relitigating the underlying action for the purposes of a malpractice suit is simply a tool by which the litigants are able to wind back the clock to determine whether the attorney proximately caused the injury.[6]

---

**6.** Suder also argues that Whiteford is precluded from challenging the first extension because it proceeded as if the first extension was proper-

### C. Suder's Motion for Summary Judgment and Whiteford's Motion to Dismiss

Whether Downes would have actually challenged the first extension if the defense of the improperly granted fifth extension was not available to him, is a question of fact. As Comment b to Section 53 of the *Restatement (Third) of the Law Governing Lawyers* explains, "What would have been the result of a previous trial presenting issues of fact normally is an issue for the factfinder in the negligence or fiduciary-breach action." To ascertain what would have happened, the trier of fact should examine the record of the underlying controversy and hear testimony from the parties and counsel. Yet

> [t]he judges or jurors who heard or would have heard the original trial or appeal may not be called as witnesses to testify as to how they would have ruled. That would constitute an inappropriate burden on the judiciary and jurors and an unwise personalization of the issue of how a reasonable judge or jury would have ruled.

*Restatement (Third) of the Law Governing Lawyers* § 53 cmt. b (2000).

We will not venture as far as the CSA did in concluding that there is "no rational reason Gregory Downes would not have challenged the original extension if he did not have available the easier target presented by the late request for a fifth extension." Perhaps Downes would have proceeded against Suder in a different manner if he believed that he could not attack the fifth extension. Or maybe he was simply oblivious to the invalidity of the first extension, a possibility indicated by a passage in his CSA brief: "The legal effect of [the first]

---

ly granted, noting that Whiteford would have violated the Maryland Rules of Professional Conduct to proceed with a claim for an elective share if it had reason to know that Suder had lost her right to elect at the onset of the representation. We disagree. The fact-finder is the proper gatekeeper as to what defenses are available to Whiteford, and shall do so by determining what Downes believed and how he would have likely acted. The erroneous belief of Suder's counsel, while conceivably relevant, does not dictate this determination.

petition was to preserve the surviving widow's option to take under the will of the decedent or to elect a statutory share...." He may have made this statement because he was actually unaware of the invalidity of the first extension. This is evidence for the trier of fact to consider in deciding what likely would have occurred had Whiteford not breached its duty. Accordingly, we reverse the judgment of the CSA and remand this case to the CSA, for it to remand to the Circuit Court for Talbot County for a trial on the merits.

**THE JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED. CASE REMANDED TO THAT COURT TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY AND REMAND FOR TRIAL IN ACCORDANCE WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**