**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-1049

_____

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, as Subrogee of
First Horizon Loans, f/k/a First Horizon Home Loan Corporation, a wholly owned
Subsidiary of First Tennessee Bank, National Association; as Subrogee of the Bank
of New York Mellon, as Trustee for the First Horizon Alternative Mortgage
Securities Trust 2006-FA8 Mortgage Pass-Through Certificates, Series 2006-FA8,

        Plaintiff – Appellant,

v.

SHULMAN, ROGERS, GANDAL, PORDY & ECKER, PA; MORTON A.
FALLER, Esquire,

        Defendants – Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Theodore D. Chuang, District Judge. (8:18-cv-03695-TDC)

_____

Argued: January 29, 2021                        Decided: April 2, 2021

_____

Before AGEE, RICHARDSON and RUSHING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Michael Joseph Marinello, KAGAN STERN MARINELLO & BEARD, LLC,
Annapolis, Maryland, for Appellant. Alvin Frederick, ECCLESTON AND WOLF, P.C.,
Hanover, Maryland, for Appellees. **ON BRIEF:** Jonathan P. Kagan, KAGAN STERN

MARINELLO & BEARD, LLC, Annapolis, Maryland, for Appellant.  Lauren E. Marini, ECCLESTON AND WOLF, P.C., Hanover, Maryland, for Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Operating as a subrogee of First Horizon Home Loan Corporation ("First Horizon") and the Bank of New York Mellon ("BNYM"), Old Republic National Title Insurance Company ("Old Republic") appeals from the district court's grant of summary judgment in favor of attorney Morton Faller and his law firm, Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman Rogers"), (collectively, "Appellees"). For the reasons set forth below, we affirm.

I.

This case arises from Appellees' representation of First Horizon following the refinancing of a loan.

A.

Heinz and Susan Georg purchased real estate (the "Property") in Cockeysville, Maryland, in February 2002 as tenants by the entirety. The Georgs executed deeds of trust in favor of Chevy Chase Bank, F.S.B. ("Chevy Chase") for a construction loan in September 2004 and a home equity line of credit in September 2006.

In October 2006, First Horizon refinanced the Chevy Chase loans for the Georgs. The loan application listed "Heinz O. Georg / Susan M. Georg" to show that title would be in their names as tenants by the entirety. J.A. 338. However, Mr. Georg was listed as the only borrower on the loan application. In fact, on some relevant documents, Mr. Georg alone signed or was indicated to be the only borrower. On others, both of the Georgs signed or were indicated to be the borrowers. Critically, neither the First Horizon Note (the

3

"Note") nor the Deed of Trust purporting to secure the Note provided a line designated for Mrs. Georg's signature, and she did not sign either document. However, believing both the Georgs to have signed the Deed of Trust, Old Republic issued an insurance policy on the Property to First Horizon to protect against defects in the title.

In December 2006, the Note and accompanying refinanced Deed of Trust for the Property were transferred to BNYM pursuant to a Pooling and Servicing Agreement, with First Horizon remaining as the master servicer of the loan. In July 2007, the Georgs signed another Deed of Trust encumbering the Property as security for a new home equity line of credit provided by Bank of America ("BOA").

In June 2009, the Georgs defaulted on the First Horizon loan. However, First Horizon could not foreclose on the Property because only Mr. Georg had signed the Deed of Trust.[1] First Horizon submitted a claim to Old Republic under its title insurance policy, triggering Old Republic's duty to indemnify.

### B.

Old Republic retained Faller of Shulman Rogers to file suit against the Georgs on behalf of First Horizon. In September 2010, Faller filed a complaint in the Circuit Court for Baltimore County, Maryland (the "circuit court"), seeking reformation of the Deed of Trust, equitable subrogation, and equitable mortgage, among other remedies. The

---

[1] "[N]either spouse may lease, dispose of or encumber land held as tenants by the entireties without the consent of the other." *Arbesman v. Winer*, 468 A.2d 633, 637 (Md. 1983).

complaint listed First Horizon as the plaintiff and the Georgs, PRLAP, Inc. ("PRLAP"), and BOA as the defendants.[2]

The trial was scheduled for April 23, 2012, but in December 2011, First Horizon informed Faller that the suit should have been filed with BNYM as the named plaintiff pursuant to the Pooling and Servicing Agreement, with First Horizon identified as BNYM's agent. On April 20, 2012, Faller filed a motion in the circuit court to correct the caption of the complaint as well as the plaintiff's name throughout (the "Correction") to indicate that First Horizon was suing in its capacity as BNYM's agent, with BNYM as the named plaintiff.

Upon commencement of the trial, the Georgs moved to strike the Correction, arguing that First Horizon was attempting to amend its pleading and substitute a new plaintiff in violation of the applicable local court rules. The circuit court agreed, denied First Horizon's request for the Correction, and proceeded with the trial.

At the close of First Horizon's case, the Georgs moved for judgment, arguing that First Horizon failed to demonstrate standing to bring the suit because BNYM was the Note's holder and there was no evidence that the omission of Mrs. Georg's signature on the Deed of Trust was a mutual mistake, as required to reform the document. After hearing argument, the circuit court explained its reservations about First Horizon's case, stating:

> [W]hat [First Horizon's] case kind of presumes is that the borrowers know all of this stuff; that they know that they can't encumber, that they know the legalities of only one persons [sic] name being on a deed of trust is a problem. No one has testified to me that any of this was ever explained to them, that

---

[2] BOA and its deed of trust trustee, PRLAP, were named because they held a secured interest in the Property based on the 2007 home equity line of credit.

this was part of the deal. The only documents that refer to the fact that an executed deed of trust by the borrowers is necessary to finalize this deal, the testimony is that was never shown to the borrowers.

J.A. 297. Faller attempted to persuade the court with a review of the loan application, citing the fact that title to the Property was to be held in both names. The circuit court remained unconvinced and questioned how a borrower would know the significance of these factors:

> You go to redo a refinance, go to buy a home, whatever, you are counting on the experts to explain things to you. . . . [W]hat I was expecting was at least someone to come here and tell me during the negotiations, during the deal, this was explained to [the Georgs]. They were told that it was necessary. Everything was explained. What the testimony was – no, we never discussed it, no, we didn't see any problem[.]

J.A. 299. The circuit court then granted the Georgs' motion, stating:

> I'm granting the motion at the close of the Plaintiff's case, since the Plaintiff has not produced the burden of going forward with this matter for the reasons that I have stated from the bench. There is no evidence that Mrs. Georg was knowledgeable about this transaction, knowledgeable that a mistake had been made or knowledgeable that it was her intent to be included on this deed of trust.

> I would note for the record the evidence is that all of these documents were not prepared by the defendants. These were all prepared by the plaintiff. No doubt there were mistakes made, but the mistakes were made by the Plaintiff in the preparation of the documents. That cannot be impugned to the Defendants and it actually works against the Plaintiffs. Case law is clear against that. They were in a position of superiority in the preparation and the conduct of this transaction. They were in complete control. They made a mistake. They don't get a do over unless they can show that that mistake was mutually made by the parties and without a showing that Mrs. Georg knew that this mistake had taken place, I cannot allow the case to go forward any further.

J.A. 300–01.

6

Faller requested clarification on whether the circuit court found that First Horizon had standing and if it was considering the equitable subrogation argument. The circuit court responded that it would "deal with . . . all [of the issues]," stating:

> [T]here is no standing. As I stated at the outset, not allowing the substitution of parties, the amended complaint references First Horizon Loans, not as an agent for any subsequent party, not as a representative for any subsequent party, but as the home loan holder, the loan holder. And that is clearly not the case based on the evidence that has been presented. They are not the home loan holder. If they were to have brought this case in a representative capacity, it should have been titled as such, should have been pled as such. All references in the document and the complaint should have said as the representative, as the agent, as the authorized agent or such language as that. So no, I will grant the defense motion in that regard as well.
>
> With regard to the subrogation, I do not find in favor of the Plaintiff in that regard. They cannot, as it is pled, they are not entitled to that. They cannot step into the place of the new home loan holder, loan note holder.

J.A. 302–03. The circuit court later clarified that its determination on the merits was in the alternative:

> I will say that I do not find that they had standing, however, in the alternative, if I am wrong with regard to the issue of standing I do not find that the Plaintiff has met its burden of production to have the case go forward based on the evidence for the reasons previously stated.

J.A. 305.

On June 22, 2012, Faller filed a Notice of Appeal on behalf of First Horizon. However, the circuit court had not entered final judgment at that time because First Horizon's claims against PRLAP and BOA remained pending.[3] The Georgs moved to dismiss the appeal, and the Maryland Court of Special Appeals (the "Court of Special

---

[3] First Horizon later filed a notice of dismissal as to its claims against these two defendants.

Appeals") dismissed it as untimely in September 2013. First Horizon did not seek review in the Maryland Court of Appeals (the "Court of Appeals"), the State's highest court.

C.

Old Republic retained new counsel to initiate a second lawsuit against the Georgs, filing this suit on behalf of BNYM in December 2013 and raising substantially similar causes of action based on the same facts as those raised in the first state court action. In December 2015, the circuit court granted the Georgs' motion for judicial decision based on res judicata and collateral estoppel. The Court of Special Appeals and the Court of Appeals affirmed the circuit court's decision.

D.

On November 30, 2018, in its capacity as subrogee[4] of First Horizon and BNYM, Old Republic filed this suit in the United States District Court for the District of Maryland against Faller and Shulman Rogers, alleging legal malpractice and breach of contract. Relevant to this appeal, in support of its legal malpractice claim, Old Republic alleged that Appellees breached the standard of care in the first state court action by failing to establish standing and to note a timely appeal.

In April 2019, Appellees filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. The district court granted summary judgment in favor of Appellees, concluding that Old Republic could not demonstrate harm to establish a claim

---

[4] Old Republic's title insurance policy with First Horizon authorized it to bring an action to establish title to the Deed of Trust as insured, or to prevent or reduce loss to First Horizon, its successors, and/or assigns.

for legal malpractice. Specifically, as to the standing claim, the district court reasoned that no harm arose from any alleged negligence because the circuit court proceeded to adjudicate the merits of First Horizon's case in the alternative to its determination on standing.

As for Old Republic's claim that Appellees failed to timely note an appeal, the district court concluded that no harm arose from this alleged negligence because First Horizon would have been unsuccessful on its underlying claims for equitable subrogation, equitable mortgage, and reformation had the case proceeded on appeal. In doing so, the district court acted on its best judgment of how the Court of Special Appeals would have determined the outcome of the appeal had Appellees timely filed the notice of appeal. The court explained that equitable subrogation would have been inapplicable because there was no intervening lien in this case. And even if Mrs. Georg's interest as a tenant by the entirety constituted an intervening lien, "First Horizon ha[d] no colorable argument that it was excusably ignorant of her claim to the Property" in order for equitable subrogation to apply. J.A. 873.

On equitable mortgage and reformation, both of which would have required a factual finding that Mrs. Georg intended to participate in the refinancing agreement to be applicable, the district court determined that the circuit court's findings to the contrary were not clearly erroneous. On this point, it held that the record supported the finding that Mrs. Georg did not intend to be included on the Deed of Trust. Accordingly, the district court concluded that First Horizon would not have prevailed on these issues either, meaning the Court of Special Appeals would have rejected all its claims on appeal.

9

Old Republic filed a timely appeal. This Court has jurisdiction under 28 U.S.C. § 1291 and reviews "the district court's order granting summary judgment de novo, viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 198 (4th Cir. 2005).

## II.

On appeal, Old Republic cites Appellees' failure to establish standing and file a timely notice of appeal in support of its legal malpractice claim. Specifically, Old Republic asserts that had Appellees established standing in the underlying state court action, First Horizon would have prevailed on its claims for equitable subrogation, equitable mortgage, and reformation. Relatedly, Old Republic contends that had Appellees timely filed First Horizon's notice of appeal, First Horizon would have succeeded on these same claims before the Court of Special Appeals. We disagree.

"Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008). There is no dispute that Maryland law applies. To prevail on a claim for legal malpractice in Maryland, a former client must prove "(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." *Suder v. Whiteford, Taylor & Preston, LLP*, 992 A.2d 413, 418 (Md. 2010) (quoting *Thomas v. Bethea*, 718 A.2d 1187, 1195 (Md. 1998)). The first two prongs are not at issue

10

in this appeal.[5] In consideration of the final prong, this Court must conduct a "trial-within-a-trial" by "assum[ing] the role of the earlier adjudicator in order to ascertain the probable outcome of the action. Simply put, the court must try a case within a case." *Id.* at 414.

A.

Old Republic cannot proceed with its claim for legal malpractice based on Appellees' failure to establish standing in the underlying state court action because First Horizon experienced no harm as a result. Indeed, rather than dismissing the case solely on standing grounds due to Appellees' failure to properly name the plaintiff or provide sufficient evidence to establish First Horizon's standing to sue, the circuit court conducted an alternative and independent analysis on the merits, ultimately finding in favor of the Georgs.

Nonetheless, Old Republic asserts that First Horizon experienced harm on the standing issue because the circuit court did not fully adjudicate First Horizon's claims for equitable subrogation and equitable mortgage. We find this argument unpersuasive. The circuit court expressly reached equitable subrogation. J.A. 303 ("With regard to the subrogation, I do not find in favor of the Plaintiff in that regard. They cannot, as it is pled,

---

[5] It is undisputed that Old Republic employed Appellees. As to the second prong, the district court remarked that, "although [Appellees] [did] not expressly concede negligence, they [did] not directly contest Old Republic's claims that the failure to identify the proper plaintiff or submit evidence that First Horizon had standing, and the failure to file a timely notice of appeal, constituted neglect of an attorney's reasonable duty." J.A. 869. On appeal, Appellees do not broach the subject of their alleged negligence, implying that they have waived any argument as to whether their conduct constituted a neglect of reasonable duty. *See Carter v. Lee*, 283 F.3d 240, 252 n.11 (4th Cir. 2002) (explaining that contentions not raised in the opening brief are generally considered waived).

11

they are not entitled to that."). And as for equitable mortgage, although the circuit court did not expressly address this claim, it extensively discussed its factual finding that the evidence did not reflect an intent on Mrs. Georg's part to be included on the Deed of Trust. This factual finding leads to the necessary conclusion that equitable mortgage was unavailable because, as will be discussed below, the parties' intent to create a mortgage is paramount in assessing the applicability of this remedy. Said another way, the circuit court's factual finding on Mrs. Georg's intent effectively foreclosed First Horizon's equitable mortgage claim. *See, e.g.*, *McCarty v. Henson*, 749 F.2d 1134, 1135 (5th Cir. 1984) ("The district court did not expressly address this claim, but its findings show that [the claim was meritless]. Accordingly, we affirm the dismissal of [this claim].").

Accordingly, considering the circuit court reached the merits of First Horizon's case despite Appellees' failure to establish standing, Old Republic cannot demonstrate the requisite loss to proceed with its claim for legal malpractice based on this argument.

B.

Nor can Old Republic proceed with its claim for legal malpractice based on Appellees' failure to timely file First Horizon's notice of appeal. In other words, had Appellees timely filed the notice of appeal, the Court of Special Appeals would nonetheless have denied relief to First Horizon on its claims for equitable subrogation, equitable mortgage, and reformation. As noted above, we analyze this claim by "assum[ing] the role of the [Court of Special Appeals] in order to ascertain the probable outcome of the action." *Suder*, 992 A.2d at 414.

12

In doing so, we review the circuit court's factual findings under a clearly erroneous standard. *Yaffe v. Scarlett Place Residential Condo., Inc.*, 45 A.3d 844, 850 (Md. Ct. Spec. App. 2012). Under this standard, "a trial court's decision [on a factual question] is afforded great deference." *Ray-Simmons v. State*, 132 A.3d 275, 280 (Md. 2016). "If there is any competent material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous." *Yivo Inst. for Jewish Res. v. Zaleski*, 874 A.2d 411, 416 (Md. 2005).

1.

We begin with an overview of the forms of relief at issue to frame our merits analysis.

The doctrine of equitable subrogation provides:

> Where a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of junior liens or other interests he will be subrogated to the prior lien.

*G.E. Cap. Mortg. Servs., Inc. v. Levenson*, 657 A.2d 1170, 1172 (Md. 1995) (quoting G.E. Osborne, Handbook on the Law of Mortgages § 282, at 570 (2d ed. 1970)). Accordingly, it "is designed to promote and to accomplish justice and is the mode which equity adopts to compel the ultimate payment of a debt by one, who, in justice, equity, and good conscience should pay it." *Fishman v. Murphy ex rel. Estate of Urban*, 72 A.3d 185, 196 (Md. 2013) (quoting *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 362 (Md. 2007)).

As to equitable mortgage,

13

if a party makes a mortgage, or affects to make one, but it proves to be defective, by reason of some informality or omission, such as failure to record in due time, defective acknowledgment, or the like, though even by the omission of the mortgagee himself, as the instrument is at least evidence of an agreement to convey, the conscience of the mortgagor is bound, and it will be enforced by a Court of equity.

*Dyson v. Simmons*, 48 Md. 207, 214 (1878). To succeed on a claim for equitable mortgage, there must be "intent of the parties to make a mortgage, to which intent, for some reason, legal expression is not given in the form of an effective mortgage; but in all such cases the intent to create a mortgage is the essential feature of the transaction." *W. Nat'l Bank of Balt. v. Nat'l Union Bank of Md.*, 46 A. 960, 962 (Md. 1900).

Finally, as to reformation, "a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement." *Hoffman v. Chapman*, 34 A.2d 438, 439 (Md. 1943). Reformation therefore acts "simply to enforce the actual agreement of the parties to prevent an injustice." *Id.* at 440.

2.

We are persuaded that the circuit court's factual findings regarding Mrs. Georg's intent to be included on the Deed of Trust were not clearly erroneous.

The circuit court found that First Horizon failed to inform Mrs. Georg about the significance of obtaining her signature on the Deed of Trust, inferring therefrom that Mrs. Georg was unaware that a mutual mistake occurred—as relevant to First Horizon's request for reformation—when she did not sign the Deed of Trust. The circuit court then concluded

14

that "[t]here [was] no evidence that Mrs. Georg was knowledgeable about this transaction, knowledgeable that a mistake had been made or knowledgeable that it was her intent to be included on this deed of trust." J.A. 300.

Applying the deferential clear error standard, these findings and the inferences reasonably drawn from them were supported by competent and material evidence in the record and were therefore not clearly erroneous. The record contains evidence sufficient to show that First Horizon failed to inform Mrs. Georg about the need for her signature on the Deed of Trust, with First Horizon's Vice President of Asset Recovery testifying that he "saw nothing that indicated a direct request to [Mrs. Georg] for [her to sign the Deed of Trust]." J.A. 275. And, as the circuit court reasonably inferred, the record evidence indicates that she was unaware of a mutual mistake having occurred when she did not sign the document. This conclusion is supported by the fact that the party who created the documents relevant to the refinancing, First Horizon, failed to include her name on some pertinent documents, including the Deed of Trust.

Old Republic's arguments to the contrary are simply "not enough to make clearly erroneous the [circuit] court's finding of fact that" Mrs. Georg was uninformed about a critical aspect of the transaction due to First Horizon's oversight and that the evidence did not establish that she intended to be included on the Deed of Trust. *Hyatt v. Shalala*, 6 F.3d 250, 256 (4th Cir. 1993).

3.

Satisfied that the evidence was insufficient to conclude that Mrs. Georg intended to be included on the Deed of Trust, we are thus compelled to conclude that Old Republic's

15

claims for equitable subrogation, equitable mortgage, and reformation fail. Said another way, the circuit court's factual finding on this point is determinative of these forms of relief under Maryland law.

As explained above, the centrality of party intent is well-documented as to equitable mortgage and reformation. *See W. Nat'l Bank of Balt.*, 46 A. at 962 (on equitable mortgage); *Hoffman*, 34 A.2d at 439 (on reformation). This same understanding of intent was duly noted in this case's second state court action not only as to equitable mortgage and reformation, but also as to equitable subrogation, culminating in the circuit court's grant of the Georgs' motion for judicial decision based on res judicata and collateral estoppel. Both the Court of Special Appeals and the Court of Appeals appeared to endorse the circuit court's characterization of the necessity of a finding of intent as a necessary prerequisite to all three claims.

Specifically, in its discussion of collateral estoppel, the circuit court expressly concluded that Mrs. Georg's intent was relevant to equitable subrogation, equitable mortgage, and reformation, stating, "[The Georgs] correctly assert that [First Horizon's] claims for equitable subrogation, equitable mortgage, and equitable lien all center on whether [Susan] intended to sign the [refinance] Deed of Trust." *Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 737 (Md. 2017) (first and second alternations added) (Court of Appeals quoting the circuit court's reasoning).

On appeal, the Court of Special Appeals endorsed this interplay between Mrs. Georg's intent and the three forms of relief at issue when addressing collateral estoppel as to all of them:

16

Judge Glass found that the issue presented in the First Horizon trial—whether Ms. Georg had the requisite knowledge and intent during the execution of the deed of trust—controls the outcome of the claims for reformation of the deed, equitable subrogation, and equitable mortgage, and was already decided in the First Horizon trial. Because BNYM raised the exact same issues in the instant case, and raised those issues under the same facts as in the First Horizon trial, Judge Glass made a correct legal determination that the first element of collateral estoppel was fulfilled.

*Bank of N.Y. Mellon v. Georg*, No. 2396 SEPT. TERM, 2015, 2017 WL 944293, at *10 (Md. Ct. Spec. App.), *aff'd*, 175 A.3d 720 (Md. 2017).

Finally, on appeal to the Court of Appeals, that Court quoted the circuit court's determination that Mrs. Georg's intent impacted equitable subrogation, equitable mortgage, and reformation in its procedural history of the case, as included above. *See Bank of New York Mellon*, 175 A.3d at 737. The Court of Appeals appeared to accept this understanding as well:

[T]he record demonstrates that the issue of mutual mistake of fact was "actually litigated and determined by a valid and final judgment," and that "determination is conclusive in" the second lawsuit. Stated differently, the issue decided in the First Horizon litigation—i.e., whether there was a mutual mistake of fact in failing to have Susan sign the refinance Deed of Trust, and, specifically, whether Susan had the requisite knowledge and intent with respect to the execution of the refinance Deed of Trust—is identical to the issue that was presented in the second lawsuit brought by [BNYM].

*Id.* at 757 (internal citations omitted); *see also id.* at 756 ("[S]ignificantly, the second lawsuit was based on the same facts and legal grounds as the First Horizon litigation— namely, that First Horizon and Susan had made a mutual mistake in failing to include Susan on the refinance Deed of Trust.").

The import of this sequence indicates that the circuit court's resolution on mutual mistake—and therefore its factual findings on Mrs. Georg's intent—underpinned the

17

adjudication of the equitable mortgage, reformation, *and* equitable subrogation claims. Consequently, seeing no carve-out particular to equitable subrogation in these Maryland appellate decisions, we are bound by their characterization of Maryland law. *E.g.*, *Horace Mann Ins. Co.*, 514 F.3d at 329 ("[O]ur role is to apply [Maryland] law[.]").

We therefore conclude that Old Republic's claims for equitable subrogation, equitable mortgage, and reformation are foreclosed due to the circuit court's factual finding that the evidence was insufficient to demonstrate that Mrs. Georg intended to be included on the Deed of Trust. In other words, had Appellees timely filed First Horizon's notice of appeal, we are persuaded that the Court of Special Appeals would have denied First Horizon's requested forms of relief on the basis of this factual finding. Having determined this to be the probable outcome had the case proceeded on appeal, we conclude that Old Republic cannot rely upon Appellees' failure to timely file the notice of appeal to demonstrate loss in support of its legal malpractice claim. Accordingly, the district court's grant of summary judgment in favor of Appellees was proper.

III.

For the reasons discussed above, the judgment of the district court is

*AFFIRMED.*